# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00115-SCT

*GUY J. HOWARD AND JOYCE HOWARD*

*v.*

*THE ESTATE OF EARLINE B. HARPER, BY AND THROUGH TALMADGE L. HARPER, ADMINISTRATOR OF THE ESTATE OF EARLINE B. HARPER, AND FOR THE USE AND BENEFIT OF THE ESTATE OF EARLINE B. HARPER, AND FOR THE USE AND BENEFIT OF THE WRONGFUL DEATH BENEFICIARIES OF EARLINE B. HARPER*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2005 |
| TRIAL JUDGE: | HON. LARRY ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM W. McKINLEY, JR. |
| | AMANDA BENEFIELD QUAVE |
| ATTORNEYS FOR APPELLEES: | DOUGLAS BRYANT CHAFFIN |
| | ANTHONY LANCE REINS |
| | SUSAN NICHOLS ESTES |
| | KENNETH LUKE CONNOR |
| | STEPHEN B. JACKSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 10/26/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

# CONSOLIDATED WITH

## NO. 2005-IA-00117-SCT

*GUY J. HOWARD AND JOYCE HOWARD*

*v.*

*THE ESTATE OF MELVIN THEAD, BY AND THROUGH SANDRA PATTON, ADMINISTRATRIX OF THE ESTATE OF MELVIN THEAD, FOR THE USE AND BENEFIT OF THE ESTATE OF MELVIN THEAD, AND FOR THE USE AND BENEFIT OF THE WRONGFUL DEATH BENEFICIARIES OF MELVIN THEAD*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2005 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM W. McKINLEY, JR. |
| | AMANDA BENEFIELD QUAVE |
| ATTORNEYS FOR APPELLEES: | DOUGLAS BRYANT CHAFFIN |
| | ANTHONY LANCE REINS |
| | SUSAN NICHOLS ESTES |
| | KENNETH LUKE CONNOR |
| | STEPHEN B. JACKSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 10/26/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

2

**FACTS AND PROCEDURAL HISTORY**

¶1. On October 6, 1997, Melvin Thead, in a state of deteriorated health, including age-related dementia and impaired cognitive skills, was admitted to a Benchmark Healthcare nursing home in Marion, Mississippi. Likewise, on December 30, 1997, Earline B. Harper, with similar health problems, was also admitted to Benchmark's Marion facility.

¶2. Representatives of both the Estates of Melvin Thead and Earline B. Harper (collectively "Plaintiffs") filed suit on April 12, 2002, and May 21, 2002, respectively, against Benchmark Health Care, Inc., and Benchmark Management and Investment, Inc. (collectively "Benchmark"), "John Does 1 through 10," and "Unidentified Entities 1 through 10." The Plaintiffs also filed suit against Joyce Howard in her capacity as administrator of Benchmark, as well as Guy J. Howard in his capacity as licensee of Benchmark, alleging (1) simple negligence, (2) medical malpractice (3) malice and/or gross negligence, (4) fraud, (5) breach of fiduciary duty, (6) survival claim, and (7) wrongful death.[1]

¶3. Subsequently, both Joyce and Guy J. Howard filed a motion to dismiss the Plaintiffs' claims against them arguing that under Miss. R. Civ. P. 12(b)(6), the Plaintiffs failed to state a claim upon which relief could be granted. The trial court denied the motion, as well as a certification of its ruling for interlocutory appeal. The Howards filed petitions for interlocutory appeal to this Court. This Court granted the petitions, stayed proceedings in the trial court pending appeal, and consolidated both cases. See M.R.A.P. 5.

---

[1] Claims for survival and wrongful death are asserted by Thead.

¶4. Finding error by the trial court, we reverse the circuit court's denial of the Howards' Motions to Dismiss under Rule 12 (b)(6).

## ISSUES

I. **Whether a Common Law Duty of Care Is Owed by a Nursing Home Administrator and Licensee to Nursing Home Patients.**

II. **Whether a Statutory Duty Is Owed by a Nursing Home Administrator or Licensee to Nursing Home Patients.**

III. **Whether the Howards, as Administrator and Licensee, May Be Held Liable for Medical Malpractice.**

IV. **Whether the Howards, as Administrator and Licensee, May Be Held Liable for Fraud.**

V. **Whether the Howards, as Administrator and Licensee, May Be Held Liable for Breach of Fiduciary Duty.**

## STANDARD OF REVIEW

¶5. "A motion to dismiss for failure to state a claim under Mississippi Rule of Civil Procedure 12(b)(6) raises an issue of law. This Court reviews questions of law de novo." *Sennett v. United States Fid. & Guar. Co.*, 757 So. 2d 206, 209 (Miss. 2000) (citations omitted). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." *Liggans v. Coahoma Sheriff's Dep't*, 823 So. 2d 1152, 1154 (Miss. 2002). Whether a duty exists is a

question of law. ***Rein v. Benchmark Constr. Co.***, 865 So. 2d 1134, 1143 (Miss. 2004); ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 174 (Miss. 1999).

## ANALYSIS

¶6. In their complaints, Plaintiffs allege defendant Joyce Howard, as administrator, was responsible for management and supervision of the nursing home, and was therefore negligent by failing to hire an adequate amount of nursing personnel, to supervise and train the personnel, as well as prepare and maintain adequate records, among other allegations. The Plaintiffs also allege defendant Guy J. Howard, as licensee, failed to provide a sufficient number of qualified personnel, including nurses and other staff to meet the needs of the Plaintiffs, in addition to other allegations.

¶7. The Plaintiffs argue the both the administrator[2] and licensee[3] owe a common-law duty of care to nursing home residents, owe a statutory duty of care to nursing home residents, and that state regulations create a private cause of action for damages for deprivations or

---

[2] Miss. Code Ann. Section 73-17-5(a) (Rev. 2002) states "[t]he term 'nursing home administrator' or 'administrator' means any individual who is charged with the general administration of a nursing home, whether or not such individual has an ownership interest in such home and whether or not the functions and duties are shared with one or more individuals. 'General administration of a nursing home' shall mean the duties of administrative performance and the making of day-to-day decisions involved in the planning, organizing, directing and/or controlling of a nursing home."

[3] In the Rules, Regulations and Minimum Standards for institutions for the Aged or Infirm, which are issued by the Mississippi State Department of Health pursuant to Miss. Code Ann. section 43-11-13 (Rev. 2002), defines a licensee as "upon whom rests the responsibility for the operation of the institution in compliance with these rules, regulations, and minimum standards." (Regulation 102.16, as amended August 12, 2004).

5

infringements of a resident's right to proper care. The Howards, on the other hand, argue no such duty exists under any legal theory. This issue is of first impression before this Court.

## I. Whether a Common Law Duty of Care Is Owed by a Nursing Home Administrator and Licensee to Nursing Home Patients.

¶8. It is well settled that a nursing home or its proprietor or owner can be held liable under general principles of tort law for negligent acts or omissions regarding the care of its residents. *See* ***Dupree v. Plantation Pointe, L.P.***, 892 So. 2d 228, 235 (Miss. 2004) (sufficient evidence existed to support a jury's finding that nursing home was not negligent in treatment and protection of a resident); ***Vicksburg Partners, L.P.***, ***v. Stephens***, 911 So. 2d 507, 513-25 (Miss. 2005) (certain provisions of an arbitration agreement found enforceable where a plaintiff filed a wrongful death action against a nursing home); ***Lagrone v. Helman***, 233 Miss. 654, 103 So. 2d 365, 368 (Miss. 1958) (jury was properly instructed that nursing home had a duty to use reasonable care for the safety of the plaintiff). The Plaintiffs argue this duty extends to administrators and licensees because they are involved with a nursing home's operations.

¶9. The Plaintiffs cite ***Bremenkamp v. Beverly Enter. - Kan., Inc.***, 762 F. Supp. 884, 891 (D. Kan. 1991) (citing ***Juhnke v. Evangelical Lutheran Good Samaritan Soc'y***, 634 P.2d 1132, 1136 (Kan. 1981)), for its holding that "the administrator of an adult care center or nursing home is under a duty to exercise reasonable care to avoid injuries to patients." However, we find that the United States District Court for the District of Kansas used the term administrator in a different sense than is used today. This Court's concludes that in using the

6

term administrator the district court was actually referring to the nursing home facility itself, since the nursing home was the only defendant named in the suit. Similarly, the *Juhnke* opinion does not discuss administrator liability. The *Juhnke* decision, where the only defendant was a nursing home, merely stated that "the proprietors of a nursing home are under a duty to exercise reasonable care to avoid injuries to patients . . . ." *Juhnke*, 634 P.2d at 1136.

¶10. The Plaintiffs also cite *Beverly Enter. - Fla., Inc. v. Spilman*, 661 So. 2d 867 (Fla. 1995), for what the Plaintiffs contend is support for the imposition of a common law duty on nursing home administrators and licensees owed to nursing home patients. The Plaintiffs point out the court's discussion of the administrator's responsibilities:

> [The facility's] administrator testified that she had not been familiar with [the patient's] plight. Surely she was familiar with the rapid transformations to neatness and cleanliness when a state inspection was imminent. She testified that she was aware of the incompetency of the director of nursing in "managerial organizational skills." It is difficult to imagine that an employee with managerial responsibilities either knew of [the patient's] plight and failed to take any action to assist this totally dependent human being or so totally ignored the operation of the nursing facility that [the patient's] plight went unnoticed. Either situation exhibits a reckless disregard of human life or of the safety of persons exposed to its dangerous effects, or reckless indifference to the rights of [the patient] . . . .

*Id.* at 873-74. We disagree with the Plaintiffs' contention. First, as in *Juhnke*, the only defendant in the case was the nursing home itself. Furthermore, the court's discussion was made in the context of whether the plaintiff was entitled to punitive damages based on the

nursing home's treatment of the plaintiff. No discussion of administrator liability exists in the *Spilman* decision.

¶11. The Plaintiffs seek to expand the current common law duty that a nursing home or its proprietor or owner can be held liable under general principles of tort law for negligent acts or omissions regarding the care of its residents. Based on the absence of statutory law from the Legislature and the absence of case law calling for the expansion of this duty, as well as the fact that such expansion would be duplicative of the duty already owed by the nursing home business owner or proprietor, we decline to impose the same common law duty upon a nursing home licensee or administrator.

## II. Whether a Statutory Duty of Care Is Owed by a Nursing Home Administrator or Licensee to Nursing Home Patients.

¶12. The Plaintiffs also argue Mississippi statutes and regulations charge administrators and licensees with a duty of care owed to nursing home residents. The Plaintiffs cite Miss. Code Ann. Sections 43-11-1, et seq., *Rules, Regulations, and Minimum Standards for Institutions for the Aged and Infirm*, and Miss. Code Ann. Sections 73-17-1, et seq., asserting these statutes and regulations establish such a duty.

¶13. An "institution for the aged or infirm" is required to obtain a license in order to operate legally in the state of Mississippi. Miss. Code Ann. § 43-11-5. The purpose of the licensing provisions is to "insure safe, sanitary and reasonably adequate care of individuals" while under the care of nursing home facilities. Miss. Code Ann. § 43-11-3. The chapter also mandates penalties for any person operating a nursing home without a license. Miss. Code Ann. § 43-11-

8

25. The statute gives the Mississippi State Department of Health the authority to grant and revoke such licenses, as well as promulgate regulations in order to promote adequate care for nursing home patients. Miss. Code Ann. § 43-11-7 through § 43-11-13. These regulations are entitled "Rules, Regulations and Minimum Standards for Institutions for the Aged or Infirm" ("Minimum Standards"). Miss. Code Ann. § 43-11-13. Sections 73-17-1 et seq., set forth licensure requirements for an individual, whether or not he has an ownership interest, who serves to perform the administrative functions of a nursing home, including the decisions involved with planning or directing the nursing home. Miss. Code Ann. § 73-17-11; Miss. Code Ann. § 73-17-5. The chapter also creates a nursing home board of administrators and explains the scope of authority granted to the board. Miss. Code Ann. § 73-17-7 through § 73-17-9.

¶14. The Minimum Standards, as mandated in section 43-11-13, list classifications, regulations, and standards a nursing home must follow. Pertinent parts of the Minimum Standards enumerate the responsibilities of both a nursing home administrator and licensee.

¶15. In reviewing statutes, "this Court follows the long established rule that statutes that are in derogation of the common law are, as a general rule, strictly construed, not extending liability 'beyond that which is clearly indicated by its express terms.'" ***Warren v. Glascoe***, 880 So. 2d 1034, 1037 (Miss. 2004) (quoting ***Houston v. Holmes***, 202 Miss. 300, 303, 32 So. 2d 138, 139 (1947)). We disagree with the Plaintiffs' contention. Neither of these licensing statutes expressly create a duty by a licensee or an administrator to residents of a nursing home; nor do we hold that a breach of a licensing statute supports a negligence action filed by

9

a third party. *See* ***Wills v. De Kalb Area Retirement Ctr.***, 530 N.E.2d 1066, 1071-72 (Ill. App. Ct. 1988) (where the state legislature did not expressly provide for a cause of action for the death of a nursing home patient by statute, the court would not authorize such an action under the statute).

¶16.    The Plaintiffs also argue that the Minimum Standards provide a cause of action against an administrator and licensee. They cite Minimum Standards Section H, 408.2 (Amended August 12, 2004), which states:

> The residents' rights policies and procedures ensure that each resident admitted to the facility is encouraged and assisted, throughout his period of stay, to exercise his rights as a resident and as a citizen, and to this end may voice grievances, has a *right of action for damages or other relief* for deprivations or infringements of his right to adequate and proper treatment and care established by applicable statute, rule, regulation or contract, and to recommend changes in policies and services to facility staff and/or to outside representatives of his choice, free from restraint, interference, coercion, discrimination, or reprisal;

(Emphasis added).    We disagree with the Plaintiffs' contention.    First, the clause does not specifically establish a right of action against a nursing homes' administrator or licensee. Second, the Plaintiffs fail to realize the limitation place on regulatory authority to create such a right. State boards and commissions are creatures of the Legislature and have no powers other than those delegated to it by the Legislature.    ***Masonite Corp. v. State Oil & Gas Bd***., 240 So. 2d 446, 449 (Miss. 1970) (State Oil and Gas Board has only the powers delegated to it by the Legislature). *Cf.* ***Oktibbeha County Bd. of Educ. v. Town of Sturgis***, 531 So. 2d 585, 589 (Miss. 1988) (county's board of supervisors has only the powers delegated to it by the legislature).    The Minimum Standards issued by the State Board of Health are a result of the

10

legislature's mandate to impose licensing requirements on nursing homes. As the scope of sections 43-11-1 et seq. is limited to licensing concerns, any duty (or inference thereof) created by the Minimum Standards is unenforceable.

¶17. Third, this Court's treatment of internal regulations does not comport with the Plaintiffs' argument. In *Moore v. Mem'l Hosp.*, 825 So. 2d 658, 660-62 (Miss. 2002), parents of a child who became ill following birth filed suit against several defendants, alleging medication the mother took during the pregnancy caused the child to suffer medical complications. Among the defendants was a pharmacy which dispensed the medication to the mother while she was pregnant. *Id*. On appeal to this Court, the parents argued the trial court erred when it granted summary judgment for of the pharmacy, because the pharmacy violated the State Board of Pharmacy's internal regulations. *Id*. at 665. We affirmed the trial court's ruling, finding that "a violation of one of [the State Board of Pharmacy's] internal regulations, which may serve as evidence of negligence, does not, however, create a separate cause of action. The regulations do not establish a legal duty of care to be applied in a civil action." *Id*. Likewise, we hold that Minimum Standards, which serve as internal licensing regulations, do not create a separate cause of action nor establish a duty of care owed by nursing home administrators and licensees to nursing home patients.

### III.     Whether the Howards, as Administrator and Licensee, May Be Held Liable for Medical Malpractice.

¶18.    The Howards argue that they cannot be held liable for medical malpractice. The Plaintiffs respond that the Howards are barred from asserting this issue on appeal because the Howards neither made this allegation in their motion to dismiss, nor made the allegation in their petition for interlocutory appeal. We disagree. In the Howards' motion to dismiss, they asserted the Plaintiffs failed to state a claim upon which relief could be granted pursuant to Miss. R. Civ. P. 12(b)(6). We find this assertion is sufficient to preserve the issue for appeal.[4]

¶19.    The Howards argue the Plaintiffs cannot maintain an action against them for medical malpractice, because as a administrator and a licensee, they are not medical providers. Instead, they are responsible for administration concerns and regulatory compliance. In *Hall v. Hilbun*, 466 So. 2d 856 (Miss. 1985), this Court stated "[m]edical malpractice is legal fault by a physician or surgeon. It arises from the failure of a physician to provide the quality of care required by law." *Hilbun*, 466 So. 2d at 866 (footnote admitted). *See Cheeks v. Bio-Medical Applications, Inc.*, 908 So. 2d 117, 120 (Miss. 2005) (in order to present a claim of medical malpractice, a plaintiff must show, inter alia, an doctor-patient relationship and its attendant duty). We agree with the Howards that, in their official capacity as licensee and administrator, they are not medical care providers. Their responsibilities are to the nursing home and the licensing authorities as stated in this Court's analysis of the Howards' second issue. As such,

---

[4] The Plaintiffs also make the same assertion with regard to the Howards' arguments against the Plaintiffs' claims of fraud and breach of fiduciary duty. However, for the same reasoning, we find the Howards' remaining arguments are properly before this Court.

we find that the Plaintiffs cannot, as a matter of law, sustain an action of medical malpractice against the Howards.

### IV. Whether the Howards, as Administrator and Licensee, May Be Held Liable for Fraud.

¶20. The Howards argue that the Plaintiffs' allegations of fraud cannot stand because the Plaintiffs failed to plead their claim with particularity. "Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated." *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642 (Miss. 1996). More importantly, circumstances constituting fraud must be stated with particularity. Miss. R. Civ. P. 9(b).

¶21. The Howards argue that the Plaintiffs' blanket assertions against them and the other defendants do not meet the particularity requirements required by Miss. R. Civ. P. 9(b) and this Court. Specifically, the Howards argue:

> In fact, the Plaintiffs only make the conclusory general allegation that "the defendants" implied that the resident in question would receive certain care while at the facility. Plaintiffs have not identified when or where any representations were made, the identity of the person who heard any misrepresentations, or that any such statements were false, much less that statements were intentionally made with knowledge of their falsity.

We agree. In their complaints, the Plaintiffs simply allege the collective defendants (not each defendant specifically) misrepresented the qualitative and quantitative care and supervision they would receive, and made those misrepresentations to the Plaintiffs and their families. The complaint does not specify the date or locations the allegedly fraudulent statements were

13

made. We find these general allegations and missing content fatal under the pleading standards of Rule 9(b). As such, the Plaintiffs' claims of fraud against the Howards must be dismissed.

### V. Whether the Howards, as Administrator and Licensee, May Be Held Liable for Breach of Fiduciary Duty.

¶22. Finally, the Howards assert that a fiduciary relationship, as a matter of law, cannot exist between nursing home patients and a nursing home's administrator and licensee based solely on their positions as administrator and licensee. This Court has defined what type of relationship produces one with fiduciary duties:

> [A] fiduciary duty exists where one person or institution assumes a trust relationship with another, such that the former, as a matter of choice or legal obligation, assumes the responsibility to act in the best interest of the latter, even to the detriment and peril of the best interests of the former.

*Roman Catholic Diocese v. Morrison*, 905 So. 2d 1213, 1239 (Miss. 2005). As we stated above, a licensee and administrator's duties are owed to their employer and licensing agencies, not to nursing home patients. In *Gray v. Beverly Enters. - Miss., Inc.*, 261 F. Supp. 2d 652, 662-63 (S.D. Miss. 2003), *reversed on other grounds by Gray v. Beverly Enters. - Miss, Inc.*, 390 F.3d 400 (5th Cir. 2004), the district court stated:

> If the Court were to find a fiduciary relationship between Plaintiff and [the nursing home licensee and administrators], then a reasonable inference could be made that each and every employee of [the nursing home], from the janitorial staff who cleaned Plaintiff's room to the chief executive officer who established policies and procedures for [the nursing home], owed a fiduciary duty to the Plaintiff. The [nursing home licensee and administrators] were primarily responsible for the management of [the nursing home], a responsibility that typically does not create a fiduciary duty.

14

We find as a matter of law that a fiduciary duty cannot exist simply because of the Howards' roles as licensee and administrator; nor do we find a duty exists otherwise, as the Plaintiffs have failed to state facts giving rise to a fiduciary relationship between the Howards and Plaintiffs. The Plaintiffs provide little information about the relationship between the Howards and the Plaintiffs, other than asserting general claims that by the type of care the Howards and the other defendants were providing, the Plaintiffs and their families held a "special confidence and trust which the Defendants accepted."

## CONCLUSION

¶23. We find the trial court improperly denied the Howards' motion to dismiss the Plaintiffs' claims against them. Based on this Court's analysis, we find no common law duty is owed by a nursing home's licensee or administrator to that nursing home's patients. Furthermore, we find no language in our nursing home licensing statutes or regulations imposing such a duty. As to the Plaintiffs' remaining claims, we find they also fail to state a claim. For the foregoing reasons, we reverse the orders of the trial court denying the Howards' motions to dismiss, and we remand these cases to the trial court with directions that

15

it (1) finally dismiss the plaintiffs' complaints and motions against the Howards with prejudice for failure to state a claim upon which relief can be granted and (2) conduct further proceedings against the remaining defendants consistent with this opinion. The stay of proceedings in the trial court will expire upon the issuance of this Court's mandate in these cases.

¶24. **REVERSED AND REMANDED.**

**WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. COBB, P.J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶25. Because those entrusted with the care of the most vulnerable among us must be held to account for their negligence, I must dissent. In providing immunity to nursing home administrators and licensees the majority provides legal cover for those responsible for ensuring the health, safety, and basic human dignity of the aged and infirm. With this shield of immunity to protect them, many administrators and licensees will be tempted to allow the conditions in nursing homes to deteriorate.

¶26. The majority holds that nursing home administrators and licensees owe no duty to the patient. In so doing, the majority discards basic tenets of tort law. Instead, we should recognize that nursing home administrators and licensees owe a duty of reasonable care to

16

their patients, and thus we would ensure that a reasonable level of care is provided to our loved ones who are unable to care for themselves.

¶27.    Mississippi recognizes the doctrine of negligence per se, which provides that violation of a statute, regulation, or ordinance will support a cause of action in tort (1) where the plaintiff is within the class protected, and (2) the harm sustained is the type sought to be prevented. *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 795 (Miss. 1995) (citing *Boyer v. Tenn. Tom Constructors*, 702 F.2d 609, 611 (5th Cir. 1983)). *See also Miss. Power & Light Co. v. Lumpkin*, 725 So. 2d 721 (Miss. 1998); *Byrd v. McGill*, 478 So. 2d 302 (1985); *Haver v. Hinson*, 385 So. 2d 605 (Miss. 1980); and *U-Haul Co. v. White*, 232 So.2d 705 (Miss. 1970). In the present case, the statutory provisions vesting authority in the Mississippi Department of Health clearly state that the purpose is to protect the patient:

> The purpose of this chapter is to protect and promote the public welfare by providing for the development, establishment and enforcement of certain standards in the maintenance and operation of institutions for the aged or infirm which will insure safe, sanitary and reasonably adequate care *of individuals in such institutions*.

Miss. Code Ann. § 43-11-3 (emphasis supplied). Additionally, "safe, sanitary and reasonably adequate care" is surely aimed at preventing the types of injuries sustained by the decedents. The alleged injuries include, among others, malnutrition, dehydration, weight loss, multiple falls, bone fractures, multiple bruises, multiple skin tears and lacerations, poor hygiene, urinary tract infections, contractures, physical abuse, and ultimately death. Because violation of a regulation can amount to negligence per se if the plaintiffs are able to prove a causal link

17

between the breach and resulting injuries, I would affirm the circuit court's orders denying the motions to dismiss and remand these cases to proceed on the merits.

¶28. The majority, however, refuses to recognize even a claim for simple negligence. It relies on *Moore v. Mem'l Hosp.*, 825 So. 2d 658 (Miss. 2002), for the proposition that state pharmacy board regulations do not establish a legal duty of care. However, *Moore* simply holds that violation of internal licensing regulations does not amount to negligence per se. The Court clearly states that the violation "may serve as evidence of negligence." *Id.* at 665. Because the *Moore* decision had previously extended the "learned intermediary doctrine" to find that pharmacists owed no duty to warn, the Court had already disposed of the simple negligence claim for different reasons. *Id.* at 663-66.

¶29. *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 795 (Miss. 1995), is more on point than the case relied on by the majority. In *Palmer*, we reversed a trial court's order granting summary judgment for a hospital because the plaintiff was able to sufficiently demonstrate a causal link between a violation of the Minimum Standards of Operation for Mississippi Hospitals and the plaintiff's injuries. *Id.* The plaintiff's cause of action against the hospital was based on the allegation that the hospital violated the state regulations when it failed to require two surgeons to be present when surgery was performed. *Id.* at 795. In the

present case, the plaintiffs allege that the defendants violated *numerous* provisions of the Minimum Standards of Operation for Mississippi Nursing Homes.[5]

¶30.    Despite the language of the statutes and regulations, the majority holds that nursing home administrators and licensees owe no duty to the patient. *See* Miss. Code Ann. § 73-17-

---

[5] The plaintiffs allege that the defendants violated the following regulations regarding resident care:

**120.02  Activities of daily living**.   Each resident shall receive assistance with activities of daily living to maintian the highest practicable well being.   These shall include, but not be limited to:
a.     Bath, dressing and grooming;
b.     Transfer and ambulate;
c.     Good nutrition, personal and oral hygiene; and
d.     Toileting.

**120.08  Accidents**.   The facility shall ensure that the residents environment remains as free of accident hazards as possible, and adequate supervision shall be provided to prevent accidents.   If an unexplained accident occurs, this injury must be investigated and reported to appropriate state agencies.

**120.09  Nutrition**.   Residents shall maintain acceptable parameters of nutritional status, such as body weight and protein levels, unless residents clinical condition indicate that this is unavoidable.   All residents shall receive diets as orders by their physician or nurse practitioner.   Residents identified with significant nutritional problems shall receive appropriate medical nutrition therapy based on current professional standards.

**120.10  Hydration**.   Each resident shall be provided sufficient fluid intake to maintain proper hydration and health.

**120.11  Special needs**.   Each resident with special needs shall receive proper treatment and care.   These special needs shall include, but are not limited to injections, parenteral and enteral fluids; colostomy; ureterostomy; ileostomy care; tracheostomy care; tracheal suction; respiratory care; foot care; and prostheses.

5(a) ("administrator" defined) and Regulation 102.16 ("licensee" defined). According to the majority, "a licensee and administrator's duties are owed to their employer and licensing agencies, not to nursing home patients." For this proposition, it relies on a case from the Southern District which was *completely overruled* by the Fifth Circuit on appeal. *Gray v. Beverly Enter. - Miss., Inc.*, 261 F. Supp. 2d 652 (S.D. Miss. 2003) (overruled by *Gray*, 390 F.3d 400 (5th Cir. 2004)). The majority states that the district court decision was reversed on other grounds, but the Fifth Circuit opinion clearly reverses and remands *all* of the claims to state court, including breach of fiduciary duty. *Id.* at 411-12.

¶31. In remanding the case, the Fifth Circuit found that both the Minimum Standards and the Mississippi common law could support a claim against administrators and licensees of nursing homes. *Id.* The opinion provides an excellent examination of the common law duty of agents which provide a basis of liability against Defendants:

> [I]n *Turner v. Wilson*, 620 So. 2d 545, 548-49 (Miss. 1983), the court stated that directors, officers, and agents may be liable for torts where they either participated in the act, authorized it or directed it, gave consent to an act, or even acquiesced in a tortious act that they knew of or "should have known of" in the exercise of reasonable care.
>
> Plaintiffs also point to numerous unreported district court decisions in Mississippi in which, under very similar circumstances . . . allegations of failure to perform managerial duties, such as maintaining adequate records and supervising those members of the staff who handled the residents' day-to-day care, were held sufficient to "afford a reasonable basis for imposing personal liability under Mississippi law." at *Estate of Bradley v. Grancare, Inc.*, 2003 U.S. Dist. LEXIS 24938, No.4:03CV93-P-B, at *5-6 (N.D. Miss. Aug. 18, 2003).
>
> . . . .

20

> Plaintiffs cannot demonstrate hands-on contact by the defendants, but such activity does not seem required to impose personal liability under Mississippi law. *One may easily be a direct participant in tortious conduct by merely authorizing or negligently failing to remedy misconduct by one's subordinates.*

390 F.3d at 409-10 (emphasis supplied).

¶32.    The majority, however, does not even address these general principles of agency.  It simply characterizes the finding of such a duty as an "expansion" and "duplicative" of the duty owed by the facility.   These arguments ignore the well-settled rule that an agent may be liable for tortious conduct to *both* the principal and the third party.   **Holland v. Mayfield**, 826 So. 2d 664, 670 (Miss. 1999) ("an agent who commits a tort is liable in both his representative capacity and in his individual capacity") (citing **American Fire Protection, Inc. v. Lewis**, 653 So. 2d 1387, 1391 (Miss. 1995); **Miss. Power & Light Co. v. Smith**, 153 So. 376, 380 (Miss. 1934) ("if both the agent and the master owe a duty to another, they may be held liable for a breach thereof jointly or severally"); and **Mullican v. Meridian Light & Ry. Co.,** 83 So. 816, 819 (Miss. 1920) ("the relation of agency does not exempt a person from liability for an injury to a third person resulting from his neglect of duty for which he would otherwise be liable.").

¶33.    The majority also attempts to distinguish cases which have found that administrators and licensees owe a common law duty to patients; these distinctions are irrelevant and meaningless.   I fail to see how there was "no discussion of administrator liability" in **Beverly Enter. - Fla. Inc., v. Spilman**, 661 So. 2d 867, 873-74 (Fla. 1995), when the majority's own

21

quote reveals that the Florida Supreme Court found that the administrator's inaction "exhibit[ed] a reckless disregard of human life."

¶34. Moreover, a Florida appellate court recently reversed a directed verdict that had been issued in favor of the managing member of a nursing facility corporation. *Estate of Canavan v. Nat'l Healthcare Corp.*, 889 So. 2d 825 (Fla. Dist. Ct. App. 2004). There defendant, like administrators and licensees under our state's regulations, was responsible for implementing the facility's policies and procedures. The court found that there was evidence by which a jury could have found that the defendant's "elevation of profit over patient care was negligent." *Id.* at 826.

¶35. The practical effect of the majority's ruling today is to render nursing home licensees and administrators virtually immune from civil suit. The majority would require nothing short of an intentional tort against the patient before a court could find liability. To grant such protection to those entrusted with the care of our loved ones is simply untenable. As Justice Sharp wrote in his concurrence to *Spilman*, "we should never cease to be shocked by Man's inhumanity to Man . . . a remedy must always be afforded." 661 So.2d at 874 (Sharp, J., concurring).

**GRAVES, J., JOINS THIS OPINION.**