# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-IA-00194-SCT

**PALMER'S GROCERY INC. d/b/a PALMER'S SHOPPERS VALUE FOODS, JASON PALMER AND DAMON PALMER**

***v.***

**CHANDLER'S JKE, INC., ROBERT W. CHANDLER, JR. AND JOSEY CHANDLER**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/23/2024 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS, JR. |
| TRIAL COURT ATTORNEYS: | JOSHUA REID DANIEL |
| | GOODLOE TANKERSLEY LEWIS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOSHUA REID DANIEL |
| ATTORNEY FOR APPELLEES: | GOODLOE TANKERSLEY LEWIS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 10/02/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., ISHEE AND BRANNING, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. Damon and Jason Palmer entered negotiations to sell their Tupelo, Mississippi, grocery store to Robert and Josey Chandler. The proposed sale involved the grocery's inventory, stock, and equipment, but it excluded any real property. On March 10, 2023, the parties orally agreed to the sale, after which the Chandlers took control of the grocery, closed it for remodeling, and met with its employees. The parties never executed a signed writing. And the Chandlers never made any payments. Two weeks later, the Chandlers backed out of the sale.

¶2.    The Palmers filed suit asserting ten claims against the Chandlers: (1) breach of contract, (2) breach of implied contract, (3) breach of the duty of good faith and fair dealing, (4) tortious breach of contract, (5) promissory estoppel, (6) equitable estoppel, (7) negligent misrepresentation, (8) negligent infliction of emotional distress, (9) joint and several liability, and (10) attorneys' fees.  The Chandlers then filed a Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss the Palmers' complaint.  The Lee County Circuit Court granted the Chandlers' motion in part and dismissed claims (1) through (7), finding that the Statute of Frauds, Mississippi Code Section 75-2-201(1) (Rev. 2016), applied.  The Palmers filed this interlocutory appeal, challenging the circuit court's judgment.  Because the Palmers' complaint plausibly invokes the merchants' exception and the part-performance exception to the Statute of Frauds under Mississippi Code Sections 75-2-201(2) and (3)(c) (Rev. 2016), we reverse the circuit court's judgment and remand this case for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3.    This case is at the Rule 12(b)(6) stage, thus the following facts are taken as true from the Palmers' complaint.

¶4.    In 2004, the Palmers assumed from their father ownership and control of Palmer's Grocery in Tupelo, Mississippi—a grocery the Palmer family has owned and operated since 1957.

¶5.    In late 2015 or early 2016, the Palmers rebranded Palmer's Grocery as Shoppers

2

Value Foods. Shoppers Value Foods is a licensable brand and supply-chain model available to independently owned grocery stores. Owners may operate under the brand by entering into a supply agreement with the wholesaler SuperValu, Inc. By converting Palmer's Grocery to a Shoppers Value Foods, the Palmers entered into such an agreement but retained full ownership and control of the grocery.

¶6.     Around January 2023, the Chandlers expressed interest in purchasing the grocery. The Chandlers, like the Palmers, are also in the grocery-store business. They own and operate multiple Shoppers Value Foods locations in Ackerman, Clinton, and Europa, Mississippi, and in Hamilton, Alabama. After the Chandlers expressed interest, the Palmers hired MSI Inventory Service to value the grocery's inventory. MSI's inventory report, dated January 9, 2023, valued the inventory at $201,020.77.

¶7.     Around March 2023, the parties agreed that the Chandlers would commission a separate valuation. The Chandlers thus hired CIS, Inc., to value the grocery's inventory. CIS delivered its inventory report to the parties on March 10, 2023, valuing the inventory at $175,000. Multiple events then transpired that day.

¶8.     First, the parties—while physically present at the grocery—further discussed the sale of the grocery. They ultimately agreed and memorialized with a handshake: (1) that the Chandlers would purchase the grocery's inventory, stock, and equipment from the Palmers for $175,000; (2) that the Chandlers would assume control over and temporarily close the grocery to remodel it, to restock it, and to install their own operating procedures; (3) that the

3

Chandlers would assume the Palmers' lease of the building[1]; and (4) that SuperValu's approval was not required for the sale to proceed or be finalized. Pursuant to this agreement, the Palmers—at the request of the Chandlers—discarded or stored in freezers the grocery's perishable items. They also informed the employees that the Chandlers now owned the grocery.

¶9. Second, after the handshake, Attorney Michael Gratz, whom the parties had jointly retained, sent an email to the Palmers and Josey Chandler. It read:

> This correspondence will confirm the basic agreement between the parties as I understand them. First, this email confirms that each of you has waived any conflict with me, my firm and/or each other considering that I currently represent each of you in other matters.
>
> Secondly, this will confirm that my obligation is to draft an Asset Purchase Agreement that reflects the deal you three have struck as it relates to the sale and purchase of inventory and equipment, and that such Agreement will not favor any one of you over the other.
>
> Lastly, my understanding of the Agreement reached is that for $175,000 Jos[ey] Chandler will purchase from Palmer's Inc. all right title and interest to the existing Inventory and equipment.
>
> I believe you are currently in discussion regarding the earnest money that needs to be paid and that you will let me know that amount as soon as possible.
>
> I am glad you three were able to reach an agreement and I look forward to finalizing everything next week.

¶10. Third, shortly after Gratz sent the email, Damon Palmer sent a text message to Robert Chandler that read: "We got everything moved and situated and shut her down." Robert

---

[1] The Palmers' father owns the building that houses the grocery.

4

responded: "Great thanks."

¶11.    Three days later, on March 13, 2023, Josey and Damon exchanged the following messages in a group text with Jason Palmer:

[Josey]:       Hey y'all!!! I wanna meet with y'all's employees and make sure who's on board and not and also wanted to see what I needed to do to make sure we keep the key ones [emoji omitted] I was thinking tomorrow id come meet with everybody but if they are feeling antsy this afternoon is fine too.. one of y'all can call me if you want or have set suggestions [emoji omitted]

[Damon]:     Hey let me reach out and see if they can meet in the morning make it easier on everybody maybe Gratz can have everything written up today too

[Josey]:       That would be great just let me know when to be there [emoji omitted]

[Damon]:     OK I'm contacting the key employees now

¶12.    Also on March 13, 2023, *The Daily Journal*, a local Tupelo, Mississippi, periodical, published an article entitled "Palmer's closes in east Tupelo as buyer takes ownership of store."  Notably, the article stated that the store had "closed" and would "reopen . . . under new ownership and management."  It also identified the Chandlers as the new owners.

¶13.    The following day, on March 14, 2023, Josey met with the grocery's employees at the grocery, which remained closed.  There, she interviewed the employees and distributed employee handbooks to them.  Further, she assured several employees that their jobs would survive the ownership transition.

¶14.    Two days later, on March 16, 2023, Gratz emailed a draft "Asset Purchase

5

Agreement" to the Palmers and Josey. The agreement contained the $175,000 purchase price. But the date of the agreement, the date of the closing, and the name of the lessor of the grocery were left blank. Further, neither the Palmers nor the Chandlers ever signed the agreement.

¶15. After Gratz emailed the draft agreement, the Palmers made multiple attempts between March 16, 2023, and March 22, 2023, to set a closing date. But the Chandlers would not agree to one. And the grocery remained closed.

¶16. On March 22, 2023, WTVA, a local news station serving Tupelo, Mississippi, published an online article entitled "Palmer family selling longtime grocery store in Tupelo." Notably, the article stated that "[t]he family is selling the store to Chandler's Shoppers Value . . . ."

¶17. On March 23, 2023, Charles Worthington, a SuperValu representative, called Jason. He informed Jason (1) that the Chandlers would not be purchasing the grocery and (2) that the Chandlers' decision was a result of SuperValu's declining to meet the Chandlers' demands. This call indicated to the Palmers—for the first time—that the Chandlers did not intend to honor the handshake deal executed by the Palmers and the Chandlers on March 10, 2023.

¶18. The Palmers then attempted to verify Worthington's claims with the Chandlers. On March 24, 2023, Damon sent a text message to Robert that read: "Hey I've got to have a talk with the employees today and decide how to go about this tomorrow can y'all just confirm

6

to me that you and josey's final decision is to not buy this grocery store." Robert responded: "Yes I can confirm at this time we not buying."

¶19. In subsequent communications, the Chandlers cited only SuperValu's position on the sale of the grocery as the reason they did not go through with the sale. They did not, however, reveal the details of that position.

¶20. By the time the Chandlers declined to purchase the grocery, it had been closed for two weeks. The closure resulted in a loss of perishable items. Nonetheless, the Palmers made efforts to liquidate the salvageable inventory and reopened the grocery. But they were unable to locate another buyer.

¶21. On May 2, 2023, Palmer's Grocery Inc. d/b/a/ Shoppers Value Foods and the Palmers filed their complaint against Chandlers JKE Inc., the Chandlers, and John Does 1-5. They pled the above facts and brought claims (1) through (10). All claims were borne of the March 10, 2023, oral agreement between the Palmers and the Chandlers.

¶22. A month later, on June 12, 2023, the Chandlers filed a Rule 12(b)(6) motion to dismiss the Palmers' complaint with prejudice. They claimed:

> The complaint does not allege that the parties ever executed a written contract. The statute of frauds [Section 75-2-201(1)] applies to this transaction. The breach of contract-based claims fail to state a cause of action as a matter of law due to the statute of frauds. The estoppel claims should also be dismissed due to the statute of frauds.
>
> . . . .
>
> The negligent misrepresentation claim should be dismissed because it is based upon a promise of future conduct, which is not actionable as a matter

7

of law.

. . . .

Negligent infliction of emotional distress is not recoverable in this case as a matter of law.[2]

¶23. After the parties filed their memoranda and responses, the circuit court held a hearing on the Chandlers' motion to dismiss on January 3, 2024. And on January 23, 2024, the court entered an Order Granting Motion to Dismiss as to Breach of Contract, Estoppel, and Negligent Infliction of Emotional Distress Claims.

¶24. Regarding the Palmers' breach-of-contract claims, the court found in relevant part: (1) "that the statute of frauds applies" because "the complaint clearly alleges that this was a contract for a sale of goods (inventory and equipment) for a price of more than $500.00"; (2) "that the plain language of the statements contained in [Gratz's] email do not indicate the existence of a binding contract between the parties"; and (3) that "[s]ince there was no written contract for the sale of the grocery store, there was no enforceable contract for such sale due to the statute of frauds." Accordingly, the court dismissed as a matter of law and with prejudice claims (1) through (4) because "those claims are predicated on the existence of an enforceable contract."

¶25. The court also dismissed the Palmers' estoppel claims for "fail[ure] to state a claim

---

2 On July 19, 2023, in a Rebuttal Memorandum of Authorities, the Chandlers abandoned their motion to dismiss as to claim (8), negligent infliction of emotional distress.

8

upon which relief may be granted." It reasoned the Palmers could not use the claims to sidestep their failure to satisfy the Statute of Frauds.

¶26. Further, the court dismissed the Palmers' negligent-misrepresentation claim, finding that it relied on "an unactionable statement of future conduct" and therefore dismissed it.

¶27. The court then dismissed Palmer's Grocery as a party because "[t]he only causes of action asserted by it" had been dismissed. But the court did not dismiss the following claims: (8) negligent infliction of emotional distress, (9) joint and several liability, and (10) attorneys' fees. Those claims survive and remain pending in the court. And the Palmers remain parties due to their personal claims of negligent infliction of emotional distress.

¶28. The Palmers subsequently filed a petition for interlocutory appeal from the circuit court's judgment, which this Court granted on July 2, 2024.

## ISSUES

¶29. The Palmers raise two issues:

1. Whether the circuit court erred in dismissing the Palmers' contract and estoppel based claims because there was a confirmatory writing satisfying the "merchant's exception" which barred the Chandler Defendants from invoking the statute of frauds as a defense.

2. Whether the circuit court erred in dismissing the Palmers' contract and estoppel based claims because the parties' conduct, including the Chandler Defendants' acceptance of the goods, established a contract.

## STANDARD OF REVIEW

¶30. "When considering a motion to dismiss, this Court's standard of review is de novo." *Springer v. Ausbern Constr. Co., Inc.*, 231 So. 3d 980, 984 (Miss. 2017) (internal quotation

9

marks omitted) (quoting ***Scaggs v. GPCH-GP, Inc.***, 931 So. 2d 1274, 1275 (Miss. 2006)).

## DISCUSSION

¶31. We first determine whether the parties were required to execute a signed writing to form a valid contract. Mississippi Code Section 75-2-201(1) provides:

> Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense *unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker*. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Miss. Code Ann. § 75-2-201(1) (Rev. 2016) (emphasis added). Here, the sale was for goods (inventory, stock, and equipment) valued at $175,000—far more than $500. Thus, the statute governs the sale that the Palmers and the Chandlers were negotiating. Accordingly, to form a valid contract, the parties were required to execute a signed writing. As the record confirms, however, they did not.

¶32. Acknowledging this deficiency, the Palmers claim (1) that two exceptions to Section 75-2-201(1)'s writing requirement apply and (2) that under either exception, the parties formed a valid contract.

### 1. Exception in Mississippi Code Section 75-2-201(2)

¶33. As to the first exception, Mississippi Code Section 75-2-201(2) provides:

> Between merchants if within a reasonable time a writing in confirmation of the contract sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements

10

of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

Miss. Code Ann. § 75-2-201(2) (Rev. 2016). Consistent with the statute's plain language, this Court has adopted five requirements for the exception to apply:

(1)     both parties are merchants;

(2)     the writing was in confirmation of the contract and sufficient against the sender;

(3)     the writing was received by the other merchant within a reasonable time after the contract was made;

(4)     the merchant receiving the writing had reason to know of its content; and

(5)     the merchant receiving the writing did not give written notice of objection within (10) days after the receipt.

*Dawkins & Co. v. L & L Planting Co.*, 602 So. 2d 838, 842 (Miss. 1992) (citing *Perdue Farms, Inc. v. Motts, Inc. of Miss.*, 459 F. Supp. 7, 14 (N.D. Miss 1978); *Doral Hosiery Corp. v. Sav-A-Stop, Inc.*, 377 F. Supp. 387, 388 (E.D. Pa. 1974); *A & G Constr. Co. v. Reid Bros. Logging Co.*, 547 P.2d 1207, 1216 (Alaska 1976)).

¶34.    Gratz, acting as a representative of both parties, sent a single email to both sides. Neither party sent a writing to the other. Rather, both parties received the same writing from a third party—Gratz. The Palmers claim that Gratz's email satisfies the requirements and thereby invokes the exception.

¶35.    Under Section 75-2-201(2), the "writing in confirmation of the contract" must be "*sufficient against the sender*[.]" § 75-2-201(2) (emphasis added). The Palmers urge this

11

Court to conclude: (1) that they were the sender because Gratz represented them and (2) that the email was sufficient against them because Gratz signed it.

¶36.   We cannot identify a single case in which an attorney representing both parties was classified as an agent of a merchant under Section 75-2-201(2).  But this Court should not act as the trier of fact in determining whether a jointly hired attorney may be considered the sender's agent. This Court has ruled that "[w]hen considering a motion to dismiss, *the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim.*" ***State v. Bayer Corp.***, 32 So. 3d 496, 502 (Miss. 2010) (internal quotation marks omitted) (quoting ***Howard v. Est. of Harper ex rel. Harper***, 947 So. 2d 854, 856 (Miss. 2006)).  We are only to determine whether, based on the allegations in the complaint, "it appears beyond reasonable doubt that the [Palmers] will be unable to prove any set of facts in support of [their] claim." ***Id.*** (quoting ***Howard***, 947 So. 2d at 856).

¶37.   Gratz's email could be considered either a "writing in confirmation of a contract" or an expression of Gratz's outside understanding of a pending transaction between the Palmers and the Chandlers.  Gratz writes, (1) "*This correspondence will confirm the basic agreement between the parties as I understand them*"; (2) "my understanding of *the Agreement reached* is that for $175,000 Jos[ey] Chandler will purchase from Palmer's Inc. all right title and interest to the existing inventory and equipment"; (3) "I believe you are *currently in discussion* regarding the earnest money that needs to be paid"; and (4) "I look forward to

12

*finalizing everything next week.*" (Emphasis added.) The writing both indicates a confirmation of the contract and the intent to finalize the agreement.

¶38. We find that the Palmers' claim is sufficient under Rule 12(b)(6). It does not appear beyond reasonable doubt that the Palmers will be unable to prove any set of facts in support of their claim. Under the exception of section 75-2-201(2), this case will ultimately be decided based on whether the trier of fact determines whether Gratz's email could be considered "a writing in confirmation of the contract sufficient against the sender." This issue survives a 12(b)(6) motion. Accordingly, the case should be reversed and remanded as to this issue.

### 2. Exception in Mississippi Code Section 75-2-201(3)(c)

¶39. As to the second exception, Mississippi Code Section 75-2-201(3)(c) provides:

> (3) A contract which does not satisfy the requirements of [Section 75-2-201(1)] but which is valid in other respects is enforceable
>
> . . . .
>
> (c) with respect to goods for which payment has been made and accepted or *which have been received and accepted*.

Miss. Code Ann. § 75-2-201(3)(c) (Rev. 2016) (emphasis added).

¶40. This Court has never addressed the exception. But for it to apply, the plain language of the statute dictates that two prongs must be satisfied. First, although not memorialized in a signed writing, the contract must be "valid in other respects[.]" § 75-2-201(3). Second, the relevant goods must have been either paid for and accepted or received and accepted. § 75-

13

2-201(3)(c).

¶41.    We reemphasize that this case is at the Rule 12(b)(6) stage.  The complaint alleges that the contract was "valid in other respects[.]"  § 75-2-201(3).  Those respects include an oral offer by the Chandlers to purchase the grocery's inventory, stock, and equipment for the price of $175,000; an oral acceptance of that offer by the Palmers; a meeting of the minds; and consideration in the form of the Palmers' closing the grocery store and manipulating inventory and stock at the Chandlers' request.  For the purpose of a 12(b)(6) review, the first prong is thus satisfied.  *See **Logan v. RedMed, LLC**, 377 So. 3d 956, 962 (Miss. 2024) (listing the six elements of contract formation (quoting **LAGB, LLC v. Total Merch. Servs., Inc.**, 284 So. 3d 720, 724 (Miss. 2019))).

¶42.    As to prong two, because the Chandlers never paid the Palmers, the Palmers necessarily argue that the Chandlers "received and accepted" the grocery's inventory, stock, and equipment—rather than paid for and accepted the goods. § 75-2-201(3)(c).  Specifically, in their complaint, the Palmers allege (1) that the Chandlers directed the Palmers to close the grocery; (2) that the Chandlers directed the Palmers to discard or freeze perishable items; and (3) that the Chandlers met with the grocery's employees and distributed employee handbooks to them.

¶43.    We find that the Palmers did not fail to state a claim.  The Palmers' complaint instead presents issues regarding (1) whether the contract was valid in other respects; (2) whether the Chandlers received and accepted the inventory, stock, and equipment; and (3) whether the

14

exception set forth in Section 75-2-201(3)(c) applies.

## CONCLUSION

¶44.    The circuit court erred by dismissing claims (1) through (4). Further, because whether the Statute of Frauds applies is unclear at this stage, the circuit court also erred by dismissing estoppel claims (5) and (6). And because whether the parties formed a valid contract is also unclear, the circuit court further erred by dismissing claim (7), negligent misrepresentation.

¶45.    The Palmers' complaint survives the Chandlers' motion to dismiss. At this stage of the pleadings, the circuit court cannot determine as a matter of law that the Palmers and the Chandlers did not form a valid contract under Section 75-2-201(2)'s merchants' exception and Section 75-2-201(3)(c)'s part-performance exception to the Statute of Frauds. Accordingly, claims (1) through (7) should proceed. We reverse the circuit court's judgment and remand this case for further proceedings consistent with this opinion.

¶46.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**