# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-IA-00994-SCT

*HENLEY, LOTTERHOS & HENLEY, PLLC*

*v.*

*AMANDA BRYANT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/11/2021 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| TRIAL COURT ATTORNEYS: | THOMAS M. FLANAGAN, JR. |
| | J. WALKER STURDIVANT |
| | AMANDA B. BARBOUR |
| | LA'TOYIA JENESSA SLAY |
| | J. WYATT HAZARD |
| | GEORGE E. ABDO, III |
| | DENNIS L. HORN |
| | SHIRLEY PAYNE |
| | CHARLES E. GRIFFIN |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TOM R. JULIAN |
| | GEORGE E. ABDO, III |
| | DENNIS L. HORN |
| | SHIRLEY PAYNE |
| ATTORNEYS FOR APPELLEE: | THOMAS M. FLANAGAN, JR. |
| | J. WALKER STURDIVANT |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED, RENDERED AND REMANDED - 05/18/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. Amanda Bryant brought this action against State Farm Automobile Insurance

Company (State Farm) and its attorneys, Henley, Lotterhos & Henley, PLLC (HLH), claiming negligence, malicious prosecution, abuse of process, and intentional infliction of emotional distress based on HLH's actions in a prior subrogation claim. HLH argued in a Motion to Dismiss or, In the Alternative, Motion for Summary Judgment that it was not a proper party to this lawsuit because it was the legal representative of the adverse party in the prior subrogation matter. For this reason, HLH argues it does not owe a duty to Bryant that could give rise to tort liability. The trial court disagreed with HLH and denied its motion. This Court granted HLH's petition for interlocutory appeal. Based on caselaw, this Court reverses the trial court's order and renders judgment in favor of HLH. Because State Farm is still party to the action, the case is remanded to the trial court for continuation of the proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2. On November 10, 2010, Nga Dang and Bryant were involved in a three-car collision in Gulfport. Dang was insured by State Farm and was compensated by State Farm for her injuries that arose from the accident. On October 28, 2013, State Farm, represented by HLH, brought a subrogation claim against Amanda Bryant for Dang's damages in the amount of $14,190.61 plus interest and court costs. The complaint stated that "Amanda Bryant - A Minor, may be served with process at: Minter City, MS[.]" The record evidences that HLH requested service of a summons and a copy of the complaint by a sheriff of Leflore County to Amanda Bryant personally and to "Amanda Bryant - A Minor By & thru Philip Ross, Jr." both to be served at 301 County Road 563, Minter City, Mississippi. Only one sheriff's

2

return was filed, and it showed that Phillip Ross Jr. was personally delivered copies of the summons and complaint on November 10, 2013. No sheriff's return was filed to prove Bryant was served with the documents.

¶3. At some point, Bryant received a copy of the complaint from Phillip Ross, her father. In response to the complaint, Bryant mailed a letter to HLH at its office.[1] The letter stated, "I got served with papers from State Farm about a car wreck." Bryant explained in the letter that she had called HLH's office and was advised to make a written response in thirty days to avoid a judgment. Bryant's letter further informed HLH that she had not been issued any citations by the officer at the scene and did not believe that the collision was her fault.

¶4. On January 23, 2014, HLH filed a First Set of Requests for Admissions, Set of Interrogatories, and Request for Production of Documents and Things Propounded to Defendant. Notice of the filing of the documents was sent to "Amanda Bryant - A Minor" at the same Minter City address as the complaint. No response to these pleadings was filed, and following a motion to compel filed by HLH, the circuit court entered an order to compel discovery on April 22, 2014.

¶5. On September 2, 2014, the court entered a default judgment against Amanda Bryant for failure to respond to the discovery requests even after having been ordered to do so by the court. The judgment stated that "[t]he defendant's answer should be [struck] and default judgment entered for the plaintiff and against the defendant in the amount of $14190.61," a

---

[1] The exact dates of when Bryant received the documents and sent the letter are unknown. When the trial court later asked HLH for the date listed on the envelope of Bryant's letter, HLH informed the court that it could not find the envelope.

total of $15,260.60, including interest, court costs and attorneys' fees.[2]

¶6. Pursuant to Mississippi Code Section 63-15-27(1) (Rev. 2022), HLH requested the suspension of Bryant's driver's license. Bryant alleges that she was unaware of the suspension of her license until sometime in 2019 when she was involved in another vehicle accident. Upon presenting her license to the officer, she was informed that her license had been suspended. Bryant was incarcerated for driving with a suspended license and subsequently contacted HLH. Allegedly, HLH informed Bryant that the only remedy for her suspended license would be to pay the judgment.

¶7. Bryant obtained counsel and filed a motion in the Leflore County Chancery Court to set aside the default judgment and dismiss the action. Bryant alleged that she had never been served with process and had never entered an appearance. In response to Bryant's motion, HLH filed a copy of Bryant's handwritten letter to support its argument that it had reason to believe that she had been served properly.

¶8. Special Judge Bell, who was appointed by this Court, held a hearing on August 31, 2020, at which evidence was presented, and HLH was granted additional time to "contact the Deputy or someone with knowledge" as to the issue of service of process. On September 10, 2020, HLH filed its response to the motion to set aside the default judgment stating that "there is no evidence explaining why a sheriff's return does not exist" and that, relying on Bryant's letter, HLH had a good faith belief that service had been proper. HLH requested

---

[2]The record does not reflect that Bryant ever filed an answer. The letter that Bryant wrote to HLH was not filed until after Bryant filed a motion to set aside this default judgment.

4

additional time to serve Bryant.

¶9.     On September 14, 2020, the trial court entered an order setting aside the default judgment and dismissing the case without prejudice. The court found that the record did not reflect proper service of process and that no answer had been filed. Bryant had testified at the August 31 hearing that she did not live at the Minter City address and that, after writing her letter to HLH, she had no notice about anything regarding the lawsuit until 2019 when she learned her license had been suspended. The court also denied HLH additional time to serve process.

¶10.    On November 20, 2020, Bryant filed the present litigation against HLH and State Farm for negligence, malicious prosecution, abuse of process and intentional infliction of emotional distress based on HLH's actions in the previous subrogation claim. On March 18, 2021, after filing its answer, HLH filed a Motion to Dismiss or, In the Alternative, Motion for Summary Judgment. HLH argued that "Mississippi law provides that a malicious prosecution claim is not viable as to the lawyer representing the plaintiff's adversary in the underlying litigation" and that HLH had been acting at all times as attorneys for State Farm and, thus, owed no duty to Bryant that would make it liable under any tort theory.

¶11.    On August 11, 2021, the trial court entered an order denying HLH's motion. HLH filed a petition for interlocutory appeal, and this Court granted permission to appeal and stayed the case in circuit court.

## ISSUE PRESENTED

¶12.    The single issue on appeal is whether the trial court erred by denying HLH's motion.

5

HLH asks whether an attorney owes a duty to an adverse party that could create tort liability. The parties' arguments can best be summarized as follows:

I.      Whether the trial court erred by finding that an attorney owes a duty to an adverse party that can give rise to tort liability.

II.     Whether Bryant's claims against HLH survive summary judgment.

## MOTION TO DISMISS v. MOTION FOR SUMMARY JUDGMENT

¶13.    HLH filed a Motion to Dismiss or, In the Alternative, Motion for Summary Judgment and attached a copy of the complaint and HLH's answer. In her reply memorandum in opposition to HLH's motion, Bryant attached the record and hearing transcript from the prior subrogation matter for the trial court's consideration. Bryant argued that ***Breeden v. Buchanan*** supports her argument that, when considering a motion to dismiss, "the court may certainly consider the content of the complaint, the documents attached to the complaint, and the documents that are referred to in the complaint if they are central to the plaintiff's claim, even though they are not attached to the complaint." ***Breeden v. Buchanan***, 164 So. 3d 1057, 1068 (Miss. Ct. App. 2015). At the hearing, HLH argued that its motion was a motion to dismiss since discovery had not yet begun and its motion was based on a question of law. The trial court styled its order a denial of HLH's motion to dismiss.

¶14.    HLH requested its motion to be heard as a motion to dismiss and argued that because it did not introduce matters outside the pleadings, it was entitled to have its motion treated as such. "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." ***State v.***

6

***Bayer Corp.***, 32 So. 3d 496, 502 (Miss. 2010) (internal quotation marks omitted) (quoting ***Howard v. Est. of Harper ex rel. Harper***, 947 So. 2d 854, 856 (Miss. 2006)).

¶15.  HLH, however, filed its motion in the alternative.  Based on the inclusion and consideration of the record from the prior subrogation matter by the trial court, HLH's motion should have been considered as a motion for summary judgment.  Rule 12(c) of the Mississippi Rules of Civil Procedure is clear that "[i]f, on motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]"  Because HLH styled its motion as, alternatively, one for either dismissal or summary judgment, the conversion of the motion was invited by HLH, and any summary judgment proof brought by Bryant should have been anticipated.

¶16.  HLH filed a rebuttal memorandum after Bryant included the record from the prior subrogation matter, which gave HLH the opportunity not only to respond to Bryant's evidence but also to bring forth its own evidence to support its arguments under a summary judgment standard.  The trial court should have either excluded the evidence and considered the motion as a motion to dismiss or converted the motion into a motion for summary judgment and allowed the parties ten days' notice and a hearing.  ***Sullivan v. Tullos***, 19 So. 3d 1271, 1275 (Miss. 2009).  It was error for the trial court to consider the additional evidence without converting the motion, but no prejudice to either party will result in this Court's conversion of the motion as both parties were given the opportunity to submit summary judgment evidence and respond to all evidence that was submitted.  Additionally,

HLH's arguments prevail under either the summary judgment or the motion to dismiss standard and because our review is de novo, it is not necessary to remand for further proceedings. *See **Trigg v. Farese***, 266 So. 3d 611, 619 (Miss. 2018) ("any error in failing to convert the motion 'is harmless if the dismissal can be justified under [Rule] 12(b)(6) standards without consideration of the matters outside the pleadings.'" (alteration in original) (quoting ***Lowe v. Town of Fairland***, 143 F.3d 1378, 1381 (10th Cir. 1998))).

## STANDARD OF REVIEW

¶17.    Both a motion for summary judgment and a motion to dismiss are reviewed de novo by this Court. ***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (Miss. 2010) (quoting ***Burleson v. Lathem***, 968 So. 2d 930, 932 (Miss. 2007)).    Additionally, HLH raised a question of law in its motion, which is also reviewed de novo. ***Miss. Farm Bureau Cas. Ins. Co. v. Hardin***, 323 So. 3d 1034, 1037 (Miss. 2021) (quoting ***Miss. Farm Bureau Cas. Ins. Co. v. Smith***, 264 So. 3d 737, 742 (Miss. 2019)).    "A trial court may grant summary judgment 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue [as to any] . . . material fact, and the moving party is entitled to judgment as a matter of law.'" ***Roussel v. Robbins***, 688 So. 2d 714, 725 (Miss. 1996) (quoting Miss. R. Civ. P. 56(c)). The evidence should be viewed in the light most favorable to the nonmoving party and, viewed in this light, if the moving party is entitled to judgment as a matter of law, then the motion should be granted. ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 362 (Miss. 1983) (citing ***Paymaster Oil Mill Co. v. Mitchell***, 319 So. 2d 652, 657 (Miss. 1975)).

DISCUSSION

## I. Whether the trial court erred by finding that an attorney owes a duty to an adverse party that can give rise to tort liability.

¶18. The trial court did not follow the clear Mississippi caselaw. This Court finds that summary judgment was appropriate because HLH has proved that as the attorney for the adverse party, it owed no duty to Bryant that could give rise to tort liability.

¶19. HLH argues that the trial court's ruling is directly contrary to this Court's ruling in *Roussel*, 688 So. 2d at 725. In *Roussel*, attorney John Robbins represented a landowner in obtaining the rezoning of a portion of his property. *Id.* at 716. Over the objections of Roussel, a neighboring landowner, the rezoning was approved by both the City of Brandon and, on appeal, by the Rankin County Circuit Court and this Court. *Id.* After the appeals, Roussel examined the files from the litigation and decided that Robbins, the attorney for the adverse party, had made false statements to the courts in a supplemental abstract. *Id.* at 717. Roussel filed a bar complaint against Robbins, which was dismissed without a hearing. *Id.* Then, Roussel filed suit against Robbins for civil fraud and negligence. *Id.* The trial court granted Robbins summary judgment on Roussel's claims. *Id.* at 719. Roussel appealed the trial court's grant of summary judgment. *Id.* at 720. On appeal, this Court affirmed the trial court's decision and stated:

> Moreover, Robbins had no duty to Roussel which could give rise to Roussel's recovery under a tort theory. In short, Roussel's allegations failed to make a claim upon which relief could be granted. That is, Roussel's claim could not even pass the test for a 12(b)(6) motion to dismiss, let alone a motion for summary judgment.

*Id.* at 725. Additionally, in a footnote, this Court stated that "Robbins correctly argues that

9

Roussel has no legitimate claim for negligence against Robbins, since an attorney has no duty to an adverse party." *Id.* n.4.

¶20. Notably at the hearing here, Bryant admitted that she agreed with HLH that an attorney acting within the routine actions of representing his client is not liable to the adverse party for his actions. Additionally, Bryant agreed with HLH that no Mississippi case stands for the proposition that an attorney can be held liable for actions made in bad faith and outside the routine acts of an attorney representing his client. Bryant, however, submits that this is a case of first impression because, in her opinion, for the first time, this Court is presented with bad-faith actions that were outside the routine activities of an attorney. Bryant proposes that an attorney's egregious misconduct and bad-faith actions that are outside the routine acts of an attorney should be defined by statutes, the Mississippi Rules of Civil Procedure and the Mississippi Rules of Professional Conduct.

¶21. HLH argues that the standard proposed by Bryant "is not only contrary to established Mississippi law" but also is "so vague as to be meaningless." HLH contends that despite clear and binding precedent, the trial court agreed with Bryant's argument. HLH points out that the "trial court did not cite a single case from any jurisdiction that supports its ruling that an attorney may be liable to an adverse party who alleges the attorney acted in bad faith."

¶22. The trial court and Bryant relied on a quote from the American Jurisprudence treatise that stated:

> An attorney who acted on behalf of a client in filing a proceeding that is the subject of a malicious prosecution claim is not immune from liability for malicious prosecution solely by reason of his or her status as an attorney. However, an attorney is not liable for malicious prosecution if he or she has

10

acted in good faith in the prosecution of a client's rights.

52 Am. Jur. 2d *Malicious Prosecution* § 92 (2011) (footnotes omitted).[3]

¶23.    Additionally, the trial court evaluated federal cases that interpreted Mississippi caselaw to find that an attorney owes no duty to an adverse party that could create tort liability for actions taken during litigation.[4]  *James v. Chase Manhattan Bank*, 173 F. Supp. 2d 544, 550 (N.D. Miss. 2001) ("This Court is unaware of any authority, however, not only in Mississippi, but anywhere in the country which suggests that an attorney owes a duty, fiduciary or otherwise, to the adverse party in a case he is litigating."); *Clinton v. Johnson*, No. 5:12-CV-84-DCB-RHW, 2013 WL 870361, at *4 (S.D. Miss. Mar. 7, 2013) ("Regardless of whether Clinton's claims against the Morgan & Morgan Defendants are viable in other states, Mississippi law does not look favorably on a litigant's attempt to sue his adversary's attorney for actions taken during the course of prior litigation.").

---

[3]HLH correctly points out that this statement no longer appears in Section 92.  It has been reworded and now appears in Section 85:

> A malicious prosecution action can be asserted against an attorney, such as a claim based on the allegedly criminal and tortious conduct of an attorney in the underlying action. However, an attorney is not liable for malicious prosecution if he or she has acted in good faith in the prosecution of a client's rights.

52 Am. Jur. 2d *Malicious Prosecution* § 85 (footnotes omitted), Westlaw (database updated Jan. 2023).

[4]Opinions of federal courts, while often persuasive and instructive, are not authority that is binding to this Court.  *See Lutz Homes, Inc. v. Weston*, 19 So. 3d 60, 64 n.6 (Miss. 2009) (citing *Sperry-New Holland, a Div. of Sperry Corp. v. Prestage*, 617 So. 2d 248, 256 (Miss. 1993), *superseded on other grounds by statute as stated in Wolf v. Stanley Works*, 757 So. 2d 316, 321 (Miss. Ct. App. 2000)); *Cucos, Inc. v. McDaniel*, 938 So. 2d 238, 241 (Miss. 2006) (citing *Griffith v. Gulf Refining Co.*, 215 Miss. 15, 36, 61 So. 2d 306 (1952)).

11

¶24. The trial court noted that none of the caselaw under consideration "found that the attorney acted in bad faith and outside the boundaries of an attorney routinely representing his client." *See Otis v. Miss. Sand Sols., LLC*, No. 3:19-CV-779-KHJ-LGI, 2021 WL 6882335, at *3 (S.D. Miss. Jan. 26, 2021) ("Plaintiffs identify no wrongful acts or omissions that Rector committed outside the routine acts of any attorney who represents his client."); *Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 842 (S.D. Miss. 2011) ("plaintiffs have expressly alleged that '[a]t all times mentioned in this action, the Defendants Forman Perry and Mulholland acted as agent and legal counsel for Illinois Central'" (alteration in original)); *James*, 173 F. Supp. 2d at 551 ("There is no indication that [the attorney] carried that duty out with anything less than good faith."); *Clinton*, 2013 WL 870361, at *4 ("But the only actions allegedly taken by the Morgan & Morgan Defendants were the routine actions of a lawyer representing a client, albeit in an allegedly frivolous lawsuit.").

¶25. Based on this reasoning, the trial court stated that "[t]o argue an attorney can never be found liable in tort for actions he takes as a lawyer . . . begs the following question: Why do the cases use limiting words and phrases such as 'bad faith' and 'outside the boundaries of routine actions?'" The trial court found that the correct rule is that

> A lawyer can be held civilly liable for tortious conduct committed in bad faith and outside the boundaries of routine representation of a client. . . . The Complaint filed herein (if taken as true) makes it abundantly clear that what has been alleged herein is not a case of 'routine actions of a lawyer' and quite possibly rises to the level of bad faith. This is not simply a lawsuit for having been the subject of a p[r]evious lawsuit.

¶26. The trial court's ruling was erroneous. Bryant's arguments regarding egregious

12

misconduct and bad faith are misplaced in that they do not fit the facts of this case. The facts of this case show that this is nothing more than a lawsuit over the failure to properly serve Bryant and to follow the rules of procedure. Bryant contends that HLH failed to serve the complaint and summons on Bryant at her correct address. Every other claim—failure to notify the court that service had not been proper, failure to make notations on their documents that Bryant was a minor, mischaracterization of Bryant's letter as an answer, failure to discover Bryant's correct address and failure to give Bryant reasonable notice before asking the court for a motion to compel discovery[5]—followed from this one mistake. While HLH's mistake unfortunately resulted in Bryant's incarceration for driving with a suspended licence, the allegations of Bryant's complaint are simply based on actions taken by HLH in routine, albeit negligent, representation of its client, State Farm. This Court finds that HLH did not act outside its role as attorney for State Farm and should not be a party to this lawsuit. Mississippi caselaw does not support a finding that HLH could be held civilly liable for actions taken in its official capacity as an attorney representing its client. *Gilmer v. McRae*, 355 So. 3d 219, 225 (Miss. 2022) (finding that attorneys were immune from suit when acting in their official capacities); *see Roussel*, 688 So. 2d at 725 (finding that an attorney has no duty to the adverse party that could give rise to recovery under a tort theory). Certainly, these cases are fact specific. Bryant's arguments regarding egregious misconduct and bad faith are best addressed in a case in which such facts exist.

---

[5]Mississippi Rule of Civil Procedure 37(a) requires: "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery[.]"

¶27. Bryant, in her complaint, alleged that "State Farm was at all times represented by Henley, Lotterhos, & Henley, PLLC, who served as attorney and agent for and on behalf of State Farm. Any actions or inactions by the Henley Law Firm are imputed to State Farm." By Bryant's own admission, State Farm can potentially be held responsible for HLH's actions. Accordingly, this Court dismisses HLH from this action, and the case is remanded for further proceedings against State Farm, the proper party defendant in this case.

## II. Whether Bryant's claims against HLH survive summary judgment.

¶28. This Court additionally finds that the elements of the negligence, malicious prosecution, abuse of process and intentional infliction of emotional distress cannot be satisfied under the facts of this case.

¶29. The dissent contends that based on an accident report that was included in the record, Bryant's claims survive summary judgment. Diss. Op. ¶ 59. The accident report is found in Bryant's submission of the certified copy of the subrogation claim record. It was not sworn nor was it accompanied by an affidavit. *See* Miss. R. Civ. P. 56; ***Magee v. Transcon. Gas Pipe Line Corp.***, 551 So. 2d 182, 186 (Miss. 1989) ("To have power to generate a genuine issue of material fact, any other documents, including but not limited to, depositions, answers to interrogatories, or affidavits must, first, be sworn; second, be made upon personal knowledge; and third, show that the party giving them is competent to testify.") This Court has stated that

> Law-enforcement accident reports are not automatically admissible under the Mississippi Rules of Evidence. Whether an accident report is admissible depends on its contents and manner in which it is offered into evidence. Certainly, an officer may testify about the information contained in

14

the accident report that is within the officer's personal knowledge. Often, however, an accident report also contains information that the officer obtained from others, and the officer has no personal knowledge of the facts sought to be admitted.

*Murray v. Gray*, 322 So. 3d 451, 458 (Miss. 2021) (footnotes omitted). "[H]earsay statements that would not be admissible at trial are incompetent to support or oppose summary judgment." *Mar-Jac Poultry MS, LLC v. Love*, 283 So. 3d 34, 43 (Miss. 2019) (alteration in original) (internal quotation marks omitted) (quoting *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1043 (Miss. 2015)).

### A.    Negligence

¶30.    Addressing Bryant's claim of negligence, Bryant first had to prove the existence of a duty to support her claim of negligence. *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). Again, Mississippi caselaw establishes that an attorney owes no duty to an adverse party that could give rise to recovery under a tort theory. *Roussel*, 688 So. 2d at 725 (attorney owes no duty to an adverse party that could give rise to recovery under a tort theory); *Gilmer*, 355 So. 3d at 255 ("Biegel and Johnson owed no duty to Gilmer, an adverse party, when they were acting in their official capacities as McRae's attorneys."). Bryant cannot prove any duty was owed to her by HLH that would cause HLH to be liable under the tort theory of negligence.

### B.    Malicious Prosecution

¶31.    In pleading her malicious prosecution claim, Bryant relies on caselaw from foreign jurisdictions to support her argument that an attorney for an adverse party may be liable to that adverse party for a claim of malicious prosecution. Bryant's claim of malicious

15

prosecution, however, cannot proceed against HLH because it violates established Mississippi caselaw.

¶32.    This Court addressed a malicious prosecution claim against an attorney in *Rose v. Tullos*, 994 So. 2d 734, 739 (Miss. 2008). Julian Rose, a doctor, filed suit against Eugene Tullos, an attorney, for malicious prosecution, civil abuse of process and violations of the Litigation Accountability Act. *Id.* at 736. Rose's allegations were based on Tullos's actions in a prior medical-malpractice suit that Tullos brought on behalf of Alma Jones, his client, against Rose and eleven other defendants. *Id.* Rose argued that once Tullos learned through discovery that Rose's actions were not the source of Jones's infection (which was the subject of the medical-malpractice action), Tullos should have voluntarily dismissed the suit. *Id.* The trial court granted Tullos summary judgment on all claims, and Rose appealed. *Id.* This Court stated that "[n]o continuing duty exists to force an attorney to abandon a claim if it later appears to be without merit." *Id.* (citing *Bean v. Broussard*, 587 So. 2d 908, 913 (Miss. 1991)). The Court found that there was "no indication from the record or the procedural posture of the underlying case that Tullos acted in any manner that was improper or would warrant sanctions" and that "Rose prevailed in the underlying suit; unsatisfied with the result, he seeks relief for having been the subject of a lawsuit. However, no such right to relief exists under the law." *Id.* at 739. The Court did not address the issue of whether an attorney is immune from a malicious prosecution claim, but it affirmed the trial court's finding on Rose's malicious prosecution claim that "Tullos, acting as Jones's attorney was not the proper party against whom to bring this [malicious prosecution] action." *Id.*

16

¶33. The dissent incorrectly asserts that we rely on *Rose* to support a finding that attorneys are immune from malicious prosecution claims by adverse parties. Diss. Op. ¶ 69. This Court makes no such finding. This Court's holding applies only to the specific facts of this case. Nevertheless, Bryant's malicious prosecution fails based on this Court's finding in *Rose*. *Id.* HLH, acting as State Farm's attorney, owed Bryant no duty that would give rise to tort liability and is therefore not a proper party to this malicious prosecution action. *See Otis*, 2021 WL 6882335, at *3 (finding, based on *Rose*, that an attorney who acted only in his capacity as counsel could not be sued for malicious prosecution (citing *Rose*, 994 So. 2d at 739)); *Harried*, 813 F. Supp. 2d at 842 (finding that plaintiffs did not dispute that, based on *Rose*, the defendants could not be held "liable to plaintiffs on a claim for malicious prosecution since in connection with the previous lawsuit, they are not alleged to have acted other than in their capacity as counsel for Illinois Central").

¶34. Bryant's claim, however, also fails because she is unable to satisfy the elements of a malicious prosecution claim.

> The elements of the tort of malicious prosecution are:
> (1) The institution of a proceeding;
> (2) by, or at the insistence of, the defendant;
> (3) the termination of such proceedings in the plaintiff's favor;
> (4) malice in instituting the proceedings;
> (5) want of probable cause for the proceedings
> (6)the suffering of injury or damage as a result of the prosecution.

*Roussel*, 688 So. 2d at 721; *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 728 (Miss. 1989).

¶35. For the first time on appeal, Bryant challenges whether HLH had probable cause to

17

bring the subrogation claim. Before the trial court, Bryant stated that she did not challenge the merits of the subrogation claim.[6] Instead, Bryant stated she was challenging whether the Court had jurisdiction to proceed with the case and whether HLH acted in bad faith and outside the routine actions of an attorney. Bryant now argues, for the first time in her brief before this Court, that because she pleaded that HLH committed the tort of malicious prosecution, she has sufficiently pleaded that HLH did not have probable cause to commence the proceeding. Bryant claims that because the accident report recorded State Farm as the insurance company for Bryant, State Farm had no right to file a subrogation claim against her for a claim arising from the very risk for which she was insured.

¶36.    HLH argues that Bryant cannot raise this argument for the first time on appeal and "[t]he fact that the accident report lists State Farm as the insurer for the vehicle Bryant was driving is a far cry from establishing that State Farm insured the 'very risk' with respect to Bryant." Additionally, HLH argues there is no evidence that State Farm compensated or

---

[6]At the hearing on July 19, 2021, on HLH's motion for summary judgment, Bryant's attorney told the trial court:

> Henley filed the subrogation lawsuit on behalf of State Farm naming Amanda Bryant as a defendant. No allegations by Amanda Bryant have been made that state that that case was meritless of [sic] frivolous. That was one of the other issues why the attorneys got - got challenged in some of those other cases. We've not made that claim. We've just simply made the claim that, well, the Court never had any jurisdiction to proceed.

This statement was made generally and was not specifically related to the malicious prosecution claim. However, because Bryant told the trial court she was not challenging whether State Farm's subrogation action had merit or was frivolous, this Court finds that Bryant's challenge to whether there was probable cause to bring the action is argued for the first time on appeal. The dissent argues we have misinterpreted the record. We have not.

18

provided liability coverage to Bryant for the accident. Because the trial court did not evaluate whether HLH initiated the subrogation action for meritorious reasons, this Court will not consider Bryant's argument for the first time on appeal. *Meredith v. Clarksdale Democratic Exec. Comm.*, 340 So. 3d 315, 325 (Miss. 2022) ("This Court does not consider issues raised for the first time on appeal." (citing *Waters v. Gnemi*, 907 So. 2d 307, 324 (Miss. 2005))).

¶37. Because HLH was the attorney for the adverse party in the prior subrogation claim against Bryant, under the authority of *Rose*, the trial court erred by denying HLH's motion for summary judgment on this claim. Simply stated, the only proof is that HLH made a mistake in service of process and took action under the mistaken belief that service was proper. Taking all facts and inferences in the light most favorable to Bryant, the nonmoving party, Bryant's malicious prosecution claim also should have been dismissed because Bryant did not sufficiently plead the elements of malicious prosecution before the trial court.

### C. Abuse of Process

¶38. Bryant's claim of abuse of process against HLH also should have been dismissed. "[T]he three elements of abuse of process are: (1) the party made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *Ayles ex rel. Allen v. Allen*, 907 So. 2d 300, 303 (Miss. 2005) (citing *McLain v. W. Side Bone & Joint Ctr.*, 656 So. 2d 119, 123 (Miss. 1995)).

¶39. Bryant alleged in her complaint that HLH "abused the judicial process by misrepresentation to the Court and by persisting in the prosecution of this action knowing

19

that the process was not complete." Bryant argues in her brief that HLH violated Mississippi Rules of Civil Procedure and Mississippi Code Section 73-3-35 (Rev. 2022)[7] when it "repeatedly presented factual assertions that lacked evidentiary support, concealed and misrepresented material facts that were central to issues before the court, failed to inquire into information readily discoverable, and failed to conform to their duties as officers of the court." Bryant claims that venue was never alleged in the complaint, and that there were no grounds to support HLH's belief that Bryant lived at "301 C.R. 563, Minter City, MS."

¶40. This Court finds Bryant's arguments fail to satisfy the elements of abuse of process. This Court stated in *Allen* that "failure to follow correct procedure does not rise to the level of abuse of process." *Allen*, 907 So. 2d at 306. Bryant proved in the previous subrogation action that HLH failed to satisfy the procedure for proper service of process, but Bryant has not shown that HLH made an illegal use of the legal process for an ulterior motive. *Id.* at 303. Similar to the malicious prosecution claim, Bryant has not alleged that HLH even had an ulterior motive. This Court finds that HLH's failure to follow correct procedure does not rise to the level of abuse of process. *See id.*

### D.  Intentional Infliction of Emotional Distress

¶41. Bryant's claim against HLH for intentional infliction of emotional distress is also without merit. To prove intentional infliction of emotional distress, Bryant had to show that HLH's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

---

[7]Section 73-3-35 is the attorney's oath which states, in relevant party, "I do solemnly swear . . . that I will use no falsehood or delay any person's cause for lucre or malice . . . ."

civilized community." ***Bowden v. Young***, 120 So. 3d 971, 980 (Miss. 2013) (internal quotation marks omitted) (quoting ***Pegues v. Emerson Elec. Co.***, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). Bryant merely alleged that HLH violated the rules of professionalism and civil procedure. Although a failure to adhere to this Court's rules is a serious offense, HLH's actions did not "go beyond all possible bounds of decency[.]" ***Id.*** (quoting ***Pegues***, 913 F. Supp. at 982). In the prior subrogation matter, HLH failed to follow proper procedure for service of process, but this action, and the results of the failure, plainly do not rise to the level of intentional infliction of emotional distress.

### E.    Violations of the Rules of Professional Conduct

¶42.    Bryant alleges that HLH's actions in the subrogation claim violated numerous rules of professional conduct. Bryant argues that HLH violated its professional duty of candor to the court and fairness to the opposing party because it

> failed to inform the Court that it did not send a copy of the [Motion to Compel Discovery] to Bryant's true address, failed to inform the court that Bryant had not been served with process, concealed from the court that Bryant was a minor by deleting the 'minor' from the heading and style of the motion [to compel], falsely representing that it had lawfully served Bryant with requests for production of documents and written interrogatories, and falsely represented a material fact to the Court that Bryant had filed an answer.

HLH argues that the Mississippi Rules of Professional Conduct do not give rise to civil liability.

¶43.    This Court has established that a violation of the Mississippi Rules of Professional Conduct "should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." Miss. R. Pro. Conduct Scope; ***Borries v. Murphy***, 324 So.

21

3d 261, 268-69 (Miss. 2021); *Hatfield v. Deer Haven Homeowners Assoc., Inc*, 234 So. 3d 1269, 1272 (Miss. 2017) (violations of the Rules of Professional Conduct and Canons of Judicial Conduct "should be addressed through disciplinary proceedings, not a direct appeal").

¶44.   Bryant further argues that "when an attorney violates the court's rules of procedure and ethics and engages in egregious misconduct, then, under those circumstances, an attorney's duty to the court, to the public, and to the adverse party supersedes any duty an attorney owes his client."  Bryant relies on a publication from the American Bar Association that analyzes a hypothetical scenario in which a client asks its "lawyers to prosecute or defend minor, frivolous, or perhaps not-so-minor cases through 'scorched earth' tactics." ABA Comm'n on Professionalism, *". . . . In the Spirit of Public Service:" A Blueprint for the Rekindling of Lawyer Professionalism* 30 (1986), available at https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ professionalism_migrated/Stanley_Commission_Report.pdf.  The American Bar Association recommends the following in that scenario: an attorney's "duty to the system of justice must transcend the duty to the client."  *Id.* at 30.  Bryant's reliance on this persuasive authority is misplaced because it does not address the actual scenario before this Court, and any alleged violation of ethical duties should be addressed by disciplinary proceedings.

¶45.   HLH contends that this Court should reverse the trial court's judgment because "Mississippi law already has ample safeguards in place to guard against attorney misconduct," and the trial court's ruling undermines the adversarial system by creating a

22

conflict of interest. Bryant argues that, if this Court reverses the trial court's judgment, then attorneys

> would be free to make false representations of material facts to the adverse party and the court, to conceal material facts from the adverse party and the court, to file an Answer for the adverse party without her permission, to ignore any requirement that he conduct pre-filing inquiries, and to repeatedly engage in professional and ethical misconduct, all without fear of liability or responsibility for any damages suffered by the adverse party as a direct result of the actions of the attorney.

This Court finds that Bryant fails to account for the myriad options, such as sanctions, bar complaints, and Mississippi's Litigation Accountability Act[8] that are available for her to air her grievance at HLH's actions in the subrogation claim.

### F.     Bryant's Alternative Argument

¶46.    Bryant argues in the alternative that if she was never properly served with process, then she was never an adverse party. Bryant takes this reasoning further to submit that if she was never an adverse party then "the rule advocated by the Henley law firm that an attorney does not owe a duty to an 'adverse party' does not apply to Bryant." Bryant does not, however, continue her argument to prove to this Court how under her legal reasoning, HLH would be liable under any tort theory to Bryant. This Court finds that Bryant's interests were adverse to State Farm's interests in the previous subrogation claim. Although Bryant was not properly served process, she was an adverse party.

### CONCLUSION

¶47.    Mississippi caselaw supports a finding of summary judgment in favor of HLH. The

---

[8]Mississippi Code Section 11-55-1 to -15 (Rev. 2019).

trial court's order is reversed, and judgment is rendered in favor of HLH, dismissing it as a party in this action. The case is remanded to the Leflore County Circuit Court for further proceedings between Bryant and State Farm.

¶48. **REVERSED, RENDERED AND REMANDED.**

**COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. KITCHENS, P.J., NOT PARTICIPATING.**

**GRIFFIS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶49. Because I find dismissal is appropriate under Mississippi Rule of Civil Procedure 12(b)(6), I concur with the majority's decision to reverse and render "in favor of [Henley, Lotterhos & Henley, PLLC], dismissing it as a party in this action." Maj. Op. ¶ 47.

¶50. Amanda Bryant's complaint alleged:

> IV.
>
> On or about October 28, 2013, defendant State Farm initiated a claim in the Leflore County Court suing Amanda Bryant pursuant to a purported subrogation claim arising from an auto accident in Gulfport, Mississippi on November 10, 2010. State Farm was at all times represented by Henley, Lotterhos & Henley, PLLC, who served as attorney and agent for and on behalf of State Farm. Any actions or inactions by the Henley Law Firm are imputed to State Farm.
>
> V.
>
> As reflected by the court file, and the Complaint filed against Amanda Bryant, Amanda Bryant was a minor at the time the suit commenced. The case was assigned civil action number 2013-0316 in the County Court of Leflore County, Mississippi. Thereafter, at the request of Henley, Lotterhos & Henley, a summons was issued to Amanda Bryant - a minor by and through Phillip Ross, Jr., 301 CR 563 Minter City, Mississippi, and a second summons was issued to Amanda Bryant, a minor personally, 301 CR 563 Minter City, Mississippi. The summons on Phillip Ross was returned "personally delivered" on November 10, 2013. There is no return on the summons to Amanda Bryant,

24

personally.

VI.

The accident which was the subject of the subrogation case against Amanda Bryant actually took place in Gulfport, Mississippi on November 10, 2010. At the time Amanda Bryant was 17 years of age and actually resided in Gulfport, Mississippi. She continued to reside in Gulfport through the date of default judgment. At no time during her lifetime has Amanda Bryant resided at 301 CR 563 Minter City, Mississippi. Despite defendants failure to secure lawful service of process pursuant to Rule 4 of the Mississippi Rules of Civil Procedures, defendant State Farm through its attorneys Henley Law Firm continued to prosecute the action against the minor Amanda Bryant. State Farm purported to serve discovery upon the minor defendant by service on the defendant at 301 CR 563 Minter City, Mississippi. Plaintiff never received any of the discovery propounded by the defendants inasmuch as she was residing in Gulfport, Mississippi at the time. Defendants failed to aver the basis for venue in Leflore County Court. Venue was not proper in Leflore County Court.

VII.

Continuing to prosecute the action without lawful process, State Farm through its attorneys filed a Motion to Compel discovery with a Certificate of Service led showing service on Amanda Bryant, 301 CR 563 Minter City, Mississippi. Amanda Bryant never received such Motion to Compel. Thereafter on May 5, 2014 Defendants submitted to the Court a proposed Order to Compel Discovery, providing Amanda Bryant 20 days in which to answer the discovery which she had never received. That proposed Order to Compel Discovery was sent to Amanda Bryant at 301 CR 563 Minter City, Mississippi. Amanda Bryant never received the proposed Order to Compel Discovery. Thereafter on or about September 2, 2014 defendants presented to the Court by mail a Default Judgment against Amanda Bryant in the amount of $15,260.60, citing that Amanda Bryant had failed to comply with the Order by failing to respond to defendant's request for production of documents and first set of interrogatories. That Default Judgement was entered by the Court. Amanda Bryant never received nor did she have any knowledge whatsoever that a Default Judgment had been submitted or entered against her.

VIII.

At some time during 2019, Amanda Bryant was involved in a minor accident and on presenting her license, was told the license was suspended. She was arrested and carried to jail for failing to have a valid drivers license. She was compelled to bond out and respond to the citation in the Municipal Court of Greenwood, MS. She later learned that the defendants had compelled the suspension of her license pursuant to Section 63-15-27 of the Mississippi Code for failure to pay the default judgment entered against her on September

25

2, 2014. When Amanda Bryant contacted a representative of the Henley Law Firm, she was told the only way her license could be reinstated was to work out a payment plan to satisfy the default judgment. She was also told that her license suspension would continue for another 7 years if she did not work out a payment plan.

IX.

Confronted with a citation for Driving with a Suspended License, and the prospect of her license being suspended for a significant period of time, and confronted with the prospect of garnishment of her wages as a result of the default judgment, Amanda Bryant was compelled to employ counsel to represent her in connection with these matters. Eventually, the Municipal Court of Greenwood, Mississippi, entered an order passing the Driving with Suspended License charge to the files. Thereafter, Amanda Bryant, through her attorney, filed a motion to set aside default judgment and for dismissal of action in cause 2013-0316. This took place after failed efforts by Counsel to have defendants voluntarily set aside the default judgment.

X.

On August 31, 2020 a hearing was conducted before the Honorable James D. Bell, Senior Status Judge who was appointed to hear the motion after the recusal of Honorable Kevin Adams, Leflore County Judge. Following hearing, an order was entered by the Court on September 14, 2020 setting aside the default judgment and dismissing the case. The Court in its ruling found that the record does not show proper service of process on Amanda Bryant.

XI.

As a direct and proximate result of the actions of the defendants, plaintiff has suffered past, present, and future pain, suffering, and mental anguish, and plaintiff has suffered other losses as a result of the improper prosecution of the case by the defendants, including but not limited to lost income, lost job opportunities, lost reputation, attorney fees, bond fees, and other damages.

XII.

Specifically, plaintiff charges that the defendants were negligent in prosecuting this case and seeking to enforce the unlawful judgment rendered, when they actually knew or should have known that the process was never served on Amanda Bryant.

XIII.

Alternatively plaintiff charges that defendants engaged in the malicious prosecution of Amanda Bryant knowing full well that lawful process had not been executed upon her personally.

XIV.

Alternatively plaintiff charges that the defendants abused the judicial

process by misrepresentations to the Court and by persisting in the prosecution of this action knowing that the process was not complete.

XV.

Alternatively plaintiff charges defendants with intentional infliction of emotional distress through the improper prosecution of the case against the minor in the Leflore County Court, as well as the subsequent actions taken against her to compel payment of an invalid and void default judgment.

XVI.

Plaintiff also charges that the commission of these wrongful acts by defendants, were intentional or were so wanton and reckless as to rise to the level of intentional conduct, thereby entitling plaintiff to recover punitive damages from defendants.

¶51. HLH's motion to dismiss or, in the alternative, motion for summary judgment asserted:

1. This defendant represented State Farm Mutual Automobile Insurance Company in regard to a subrogation action against the plaintiff. The Complaint asserts at paragraph 4 that "State Farm was at all times represented by Henley Lotterhos & Henley, PLLC, who served as attorney and agent for and on behalf of State Farm."

2. The Complaint purports to assert a cause of action against this defendant, counsel for plaintiff's adversary in the underlying litigation, for malicious prosecution and other tort-based claims.

3. Mississippi law provides that a malicious prosecution claim is not viable as to the lawyer representing the plaintiff's adversary in the underlying litigation.

4. Further, Mississippi law establishes that an attorney owes no "duty" to the adverse party in a case he is litigating and, accordingly, cannot be liable to his client's adversary "under a tort theory."

¶52. At the motion hearing, HLH argued that its motion was a motion to dismiss, and it requested that its motion be heard as a motion to dismiss. The trial court considered the motion as a motion to dismiss and ruled:

The Complaint filed herein (if taken as true) makes it abundantly clear that what has been alleged herein is not a case of "routine actions of a lawyer"

27

and quite possibly rises to the level of bad faith. This is not simply a lawsuit for having been the subject of a pervious lawsuit.

> IT IS, THEREFORE, ORDERED AND ADJUDGED, that . . . Defendant's Motion to Dismiss for failure to state a claim for relief is hereby denied.

¶53. "When considering a motion to dismiss for the failure to state a claim upon which relief can be granted, we are limited to review of the contents of the complaint . . . ." ***Spiers v. Oak Grove Credit, LLC***, 328 So. 3d 645, 651 (Miss. 2021). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." ***State v. Bayer Corp.***, 32 So. 3d 496, 502 (Miss. 2010) (internal quotation marks omitted) (quoting ***Howard v. Est. of Harper ex rel. Harper***, 947 So. 2d 854, 856 (Miss. 2006)).

¶54. If we consider HLH's motion and accept the allegations of the complaint as true, "it appears beyond reasonable doubt that . . . [Bryant] will be unable to prove any set of facts in support of her claim." ***Id.*** (internal quotation mark omitted) (quoting ***Howard***, 947 So. 2d at 856). The majority correctly notes: "HLH has proved that as the attorney for the adverse party, it owed no duty to Bryant that could give rise to tort liability." Maj. Op. ¶ 18. Thus, if we accept the allegations of the complaint as true, HLH owed no duty to Bryant and is not liable to Bryant under any tort theory. Therefore, I agree with the majority's conclusion to reverse and render judgment in favor of HLH, but I find that dismissal is proper under Mississippi Rule of Civil Procedure 12(b)(6).

¶55. The majority acknowledges that "HLH's arguments prevail under . . . the motion to

dismiss standard[.]" Maj. Op. ¶ 16. But the majority then finds that "[b]ased on the inclusion and consideration of the record from the prior subrogation matter by the trial court, HLH's motion should have been considered as a motion for summary judgment." Maj. Op. ¶ 15.

¶56. The record shows that the motion was *not* considered a motion for summary judgment. Instead, the motion was considered and treated as a motion to dismiss. And the trial court denied the motion under Rule 12(b)(6), with no discussion or consideration regarding Mississippi Rule of Civil Procedure 56.[9] This appeal considers only the trial court's denial of a motion to dismiss under Rule 12(b)(6). I find it unnecessary to discuss the alternative motion for summary judgment or to consider HLH's motion under a summary judgment standard. Instead, this appeal can be and should be resolved under Rule 12(b)(6).

¶57. Based on my review of the complaint, "it appears beyond reasonable doubt that [Bryant] will be unable to prove any set of facts in support of her claim." *Bayer Corp.*, 32 So. 3d at 502 (internal quotation mark omitted) (quoting *Howard*, 947 So. 2d at 856). As such, the trial court's order denying HLH's motion to dismiss should be reversed, and judgment should be rendered in favor of HLH under Rule 12(b)(6).

**KING, PRESIDING JUSTICE, DISSENTING:**

¶58. The majority disregards the standards for determining whether summary judgment is appropriate, and incorrectly, especially in light of the summary judgment standards,

---

[9] Despite the alternative relief requested, HLH did not file "an itemization of the facts relied upon and not genuinely disputed[.]" UCRCCC 4.02(2). This is required under Uniform Civil Rule of Circuit and County Court Practice 4.02(2) for the court to consider a motion for summary judgment.

categorizes the attorneys' actions as simply one mistake. Moreover, in its malicious prosecution analysis, the majority relies on incorrect interpretations of the record and the caselaw. Because I believe that, when viewing the evidence in the light most favorable to Amanda Bryant, the nonmoving party, the trial court was correct to deny Henley, Lotterhos & Henley, PLLC's (HLH) motion for summary judgment, I respectfully dissent.

¶59. As the majority recognizes, when deciding a summary judgment motion, the evidence must be viewed in the light most favorable to the nonmoving party, in this case, Bryant. *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 362 (Miss. 1983) (citing *Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652, 657 (Miss. 1975)); Maj. Op. ¶ 17. The accident report for an accident that occurred in Gulfport, Mississippi, in Harrison County listed Bryant as living at an address in Gulfport, Mississippi.[10] The accident report further showed that Bryant engaged in "No Apparent Improper Driving." Moreover, the accident report noted that Bryant's insurer was State Farm, HLH's client on behalf of whom it sued Bryant. Further, the accident report cited Dang, the person whose damages State Farm sought to recover from Bryant, as "Following Too Closely." State Farm, through HLH, then sued Bryant in Leflore County for an accident that occurred in Gulfport/Harrison County and against a defendant whose listed address was in Gulfport/Harrison County. State Farm's original complaint against Bryant, drafted by HLH, correctly noted that Bryant was a minor. HLH knew that,

---

[10]As the majority admits, the accident report was part of the certified *court* record in the subrogation case, certified by the trial court clerk. The majority claims this is hearsay. Hearsay is a statement "a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c)(2). No one is relying on the accident report to prove the truth of the matter asserted, i.e., that the accident occurred. Rather, the accident report shows HLH's state of mind and knowledge when filing the subrogation lawsuit.

30

according to Mississippi Rule of Civil Procedure 4, as a minor over the age of twelve, Bryant was entitled to personal service of the complaint. M.R.C.P. 4(d)(2)(A). HLH also knew that, according to Rule 4, minors like Bryant cannot waive personal service. M.R.C.P. 4(e). Despite the accident report giving her address as being in Gulfport, HLH purported to serve the complaint to her at an address in Minter City, Mississippi, where she had never lived. No sheriff's return for personal service of Bryant exists.

¶60. In a pro se letter from Bryant that HLH admits to receiving around 2013, Bryant represents that she spoke to "Kim" at HLH, who

> said all I need to do it [sic] put [']I don't feel Im [sic] at fault['] in writting [sic], and in 30 days if I don't respond[] I'll get a judgement on me." She then wrote "I am responding because I don't fully understand how I'm held for 14[,]190.61[.] What about my car her insurance should cover my car (Right) so I would like to know what is the next step because I don't see where im [sic] responsible thanks for your time.

HLH also filed discovery, and in filings with the court subsequent to the complaint, removed the "minor" designation for Bryant from the paperwork. Moreover, in its motions to compel discovery and for default judgment, HLH asked the court to strike Bryant's answer, despite the fact that Bryant never filed an answer. The default judgment was issued in 2014 and from 2016 to 2019, HLH subpoenaed Bryant's drivers' license information and employment information and eventually had her drivers' license suspended. At that point, HLH presumably had further information regarding Bryant's correct address.

¶61. Bryant testified that when she learned that her license was suspended, she called HLH, and it informed her that her only option was to set up a payment plan. Bryant then hired an attorney who filed a motion to set aside the default judgment in November 2019. On August

13, 2020, HLH attempted to file Bryant's 2013 letter to it as her official answer *on her behalf*. The letter from HLH to the circuit clerk of Leflore County stated, "Please file the enclosed Defendant's Answer in the above referenced case and return a stamped file copy to me."

¶62. The majority characterizes these facts as "one mistake" and its consequences. Maj. Op. ¶ 26. Perhaps a jury would agree, but the majority's generous characterization is not the lens through which we view the evidence on summary judgment. We view the evidence in the light most favorable to Bryant, and with that requirement, the evidence does not lend itself to being categorized as a simple mistake. When viewed in the light most favorable to Bryant, HLH, in possession of the accident report, sued State Farm's own client for a wreck, for which Bryant was not at fault, on behalf of the at-fault party. It sued Bryant in a county it knew she did not live and in which the accident did not occur. Knowing it did not properly serve Bryant and with full knowledge that she was a minor, it continued to pursue the case, sending all correspondence to the incorrect address. Then, when Bryant did call the office pro se, HLH gave her incorrect legal advice. Having received a pro se letter very obviously directed to HLH in which Bryant disputed her own fault and expressed confusion as to the next steps, HLH did nothing. Further, Bryant clearly indicated that HLH directed her to write such a letter to handle the matter, thus allegedly giving a pro se opposing party faulty legal advice. HLH then eliminated the designation of minor on court papers, which, in the light most favorable to Bryant, may have been to mislead the trial court. It further represented to the trial court that Bryant had filed an answer, despite HLH's knowledge that she had filed

32

nothing. After Bryant learned of the default judgment against her, she alleges that she again called HLH and was advised that her only option to reinstate her license was to set up a payment plan; otherwise, HLH advised, it would keep her license suspended for seven years. When Bryant hired an attorney, HLH attempted to file an answer on Bryant's behalf, despite the fact that her own attorney could have filed an answer

¶63. Thus, when viewed in the light most favorable to Bryant, the evidence potentially shows that HLH, on behalf of State Farm, filed a meritless lawsuit (against State Farm's own innocent client to recover money paid on behalf of its at-fault client), filed it in the wrong venue to subvert Bryant's knowledge of the lawsuit, failed to personally serve Bryant, hid the lack of personal service from the court, misled Bryant, ignored Bryant, and then misled the trial court in order to obtain a default judgment against Bryant. When these facts were brought to light, HLH again gave Bryant misleading legal advice and then attempted to file a pleading on Bryant's behalf, despite Bryant and her own attorney having no pleadings to file, thus arguably attempting to mislead the clerk into filing something that would then mislead the court. While there are several ways to interpret the evidence, when doing so in the light most favorable to Bryant, HLH's conduct certainly appears egregious, potentially involving questionable or improper motive. Consequently, I believe we need to squarely address the issue of attorney conduct giving rise to tort liability to an adverse party.

¶64. First, the concept of duty must be addressed, as I believe the caselaw that states that an attorney owes no duty to an adverse party that gives rise to tort liability is being misunderstood. The elements of negligence are duty, breach, causation, and injury.

33

*Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (quoting *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006)). I find it difficult to imagine many situations in which a party could show that the attorney for an adverse party owed them a duty sufficient to give rise to liability for ordinary negligence, although I reserve judgment on declaring that it is impossible, particularly in cases involving wanton or reckless conduct. However, negligence is not the only type of tort liability. Negligence relies on a breach of the standard of care, or duty, particular to the facts, while intentional torts require an act of intentional behavior that is designed to bring about injury. *McCullough*, 212 So. 3d at 76. For most intentional torts, plaintiffs do not have to prove any specified or specialized duty. "[D]uty, in the traditional sense, is a specific concept applicable to the law of negligence, not to intentional torts." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 21 (Ariz. 2002). "The word 'duty' is used most frequently in that part of the Restatement of this Subject which deals with the subject of Negligence." Restatement (Second) of Torts § 4, cmt. (1965), Westlaw (database updated Mar. 2023). "'Duty' is rarely used in dealing with the invasions of legally protected interests by acts which are intended to invade them." *Id.*

> [A] finding of duty is necessary only for Plaintiffs' two claims in negligence; his claims for intentional torts require no traditional finding of duty to [Plaintiff] because the acts alleged were intentional. Indeed, it would be anomalous to invoke a lack of a specific duty in dismissing a complaint for an intentional act, such as assault or battery. The duty, if it must be so named, is obviously to refrain from intentional harm to others. At the level of intent, reference to duty becomes a needlessly academic and didactic exercise.

*Purvis v. Hamwi*, 828 F. Supp. 1479, 1483-84 (D. Colo. 1993).

34

¶65. Consequently, the notion that an attorney owes no specialized duty to an adverse party certainly should not extend to all actions based in tort, particularly intentional torts. For example, if an attorney deposing an adverse party became frustrated with that party's untruthful responses and punched the adverse party, it would be absurd to hold the attorney immune from being sued for the tort of battery. The caselaw that sweepingly states that an attorney owes an adverse party no duty that gives rise to liability in tort is more properly applied to cases involving allegations of ordinary negligence, in which, presumably, sanctions could usually rectify any damage done.

### A. Negligence

¶66. While I am not convinced that the allegations, if true, allege only "ordinary" negligence for which Bryant cannot show that HLH had a duty to her, I believe that it is not necessary to address that issue in this case. When construed in the light most favorable to Bryant, the concept of HLH's duty to her becomes murky. Viewing the evidence in the light most favorable to Bryant, HLH undertook giving her legal advice both times she called it, and failed to instruct her to hire her own attorney. Further, HLH attempted to file a pleading on Bryant's behalf, and attorneys certainly owe certain duties to the person on whose behalf they file documents with the court. I would therefore find that a genuine issue of material fact exists regarding HLH's duty to Bryant. *See **Gibson v. Williams, Williams & Montgomery, P.A.**,* 186 So. 3d 836, 848-50 (Miss. 2016).

### B. Malicious Prosecution

¶67. The majority's determination of Bryant's malicious prosecution claims relies on

35

incorrect interpretations of both the record and the caselaw. First, the majority repeatedly asserts that Bryant challenges probable cause to bring the subrogation lawsuit for the first time on appeal. Maj. Op. ¶¶ 34-36. This is incorrect. First, the motion at issue was HLH's motion, not Bryant's, and HLH never argued that Bryant failed to show probable cause. HLH's entire argument was that attorneys can never be held liable in tort to an adverse party. Bryant responded primarily to that argument and had no duty to dispel arguments that HLH did not even make to the trial court.

¶68. Moreover, Byant actually went above and beyond and *did* argue to the trial court that HLH lacked probable cause to bring the subrogation lawsuit. In her response to HLH's motion to dismiss or, in the alternative, motion for summary judgment, Bryant stated:

> Even though Amanda Bryant was driving her father's car which the accident report showed was insured by State Farm at the time of the November 10, 2010 car accident, entitling Amanda Bryant to coverage under her father's State Farm policy, the Henley law firm, having possession of the accident report showing that her father's car was insured by State Farm, knew that its client, State Farm, had no right of subrogation against its own insured for a claim arising from the very risk for which the insured, Amanda Bryant, was covered. The Henley law firm filed, in essence, a lawsuit by State Farm against State Farm since State Farm was responsible for paying any damages recovered in its subrogation claim in the 2013 collection lawsuit.

Clearly, Bryant raised this issue before the trial court, even though HLH did not on its own motion, and Bryant had no obligation to preserve an issue HLH did not raise. But now, the majority penalizes Bryant for her alleged failure to counter an argument that HLH did not make to the trial court. Not only did Bryant not have an affirmative duty to counter an argument HLH never made to the trial court, she actually did make that argument before the trial court. HLH is the party that failed to make this argument before the trial court, and this

36

Court should not make it for them.[11]

¶69. Then, compounding this error, the majority claims that allowing a malicious prosecution claim against the attorney for an adverse party "violates established Mississippi caselaw." Maj. ¶ 30-31. The majority cites *Rose v. Tullos* for this proposition, despite the fact that the Court in *Rose specifically declined to address the issue. Rose v. Tullos*, 994 So. 2d 734, 739 (Miss. 2008). The majority's statement that "Tullos, acting as Jones's attorney, was not the proper party against whom to bring this [malicious prosecution] action" is made out of context, given that this statement was the Court summarizing the trial court's finding. Maj. Op. ¶ 32 (alteration in original) (internal quotation marks omitted) (quoting *Rose*, 994 So. 2d at 739). The full paragraph states:

> The trial court held that it lacked jurisdiction over this matter. Tullos, acting as Jones's attorney, was not the proper party against whom to bring this action. Rose argues that some sort of immunity from suit has been granted to Tullos, and thereby all attorneys in Mississippi, by the trial court. *The issue of attorney immunity from suit on the ground of malicious prosecution was never raised at trial and is not properly before this Court.* Therefore, the trial court's dismissal should be affirmed.

*Rose*, 994 So. 2d at 739 (emphasis added). The Court went on to note, in dicta, that "[n]o continuing duty exists to force an attorney to abandon a claim if it later appears to be without merit" because "the threshold inquiry must take place at the time of the filing of the lawsuit." *Id.* The Court further observed that "[t]here is no indication from the record or the procedural posture of the underlying case that Tullos acted in any manner that was improper

---

[11]The majority compounds this error in footnote 6 by further insisting that it was Bryant's duty to disprove something that Henley did not raise in its own motion, and by asserting that a vague statement made by Bryant's lawyer somehow fails to do this.

or would warrant sanctions." *Id.* Instead of relying on any established caselaw, the majority is holding, for the first time, that attorneys for adverse parties are immune to suits for malicious prosecution. I would hold that they are not. Malicious prosecution is an intentional tort with malice as one element, and proving such a tort against an adversary's attorney would necessarily require proof that the attorney exceeded the bounds of routine representation. *See Royal Oil Co. v. Wells*, 500 So. 2d 439, 442 (Miss. 1986). Consequently, I would find that malicious prosecution is a viable claim against an attorney for an adverse party and that, construing the facts in the light most favorable to Bryant, that claim should survive HLH's motion for summary judgment.

### C. Abuse of Process and Intentional Infliction of Emotional Distress

¶70. For the reasons stated above, when the evidence is viewed in the light most favorable to Bryant, I believe genuine issues of material fact exist as to whether an ulterior motive by HLH can be shown and whether HLH's conduct is sufficiently outrageous to warrant an intentional infliction of emotional distress claim.

¶71. Because I believe that the facts, when construed in favor of Bryant, create genuine issues of material fact sufficient to survive summary judgment, I would affirm the trial court's finding that "[t]he Complaint filed herein (if taken as true) makes it abundantly clear that what has been alleged herein is not a case of 'routine actions of a lawyer[.]'" Consequently, I respectfully dissent.

38